741 So.2d 560 (1999)
STATE of Florida, Petitioner,
v.
VIATICAL SERVICES, INC., et al., Respondents.
No. 99-2018.
District Court of Appeal of Florida, Fourth District.
August 4, 1999.
Rehearing Denied October 19, 1999.
*561 Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for petitioner.
Stephen L. Ziegler and Michael J. McNerney of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, Fort Lauderdale, and Benedict P. Kuehne and Jon A. Sale of Sale & Kuehne, P.A., Miami, for respondent.
WARNER, C.J.
In connection with the issuance of a search warrant on a business, the trial court decided to conduct an adversarial hearing prior to the issuance of the warrant. Although the trial court found probable cause, it refused to issue the search warrant requested because of concerns that the documents sought to be seized might contain medical records implicating a right of privacy, and the seizure of the documents might impair the business of the respondent. The state thereupon filed a petition for mandamus and petition for certiorari to review the order of the trial court. We redesignate the petition for mandamus as a petition for certiorari and grant the same.
Mutual Benefits Corp. ("Mutual") is a company engaged in the business of viatical settlements, a practice substantially regulated by statute. See § 626.991, Fla. Stat. (1997). Its business consists of purchasing life insurance policies from insureds who must be terminally ill in order to sell their policies. The terminally ill insured sells the policy to Mutual at a discount from its face value. Mutual either holds the policy in its own name or sells it to an investor to pay the premiums and then collects the benefits upon the death of the insured.
On June 7, 1999, an investigator with the Insurance Fraud Division of the Department of Insurance ("Department") presented an affidavit and application for a search warrant to the trial judge seeking to search the premises of Mutual. The application for the warrant requested a search for business, financial, and other records indicating attempts to conceal the actual medical history of life insurance applicants or owners. The affidavit was based on an examination of Mutual's records by investigators with the Department which indicated that twenty-two percent of the files reviewed were missing disclosures of required information. Through its review of the records, the Department had already identified sixteen files which showed obvious fraud in the application for life insurance by the insured, generally by the insured lying about his or her terminal illness when applying for the policy. That information would be known to Mutual when it purchased the policy and sold it to an investor as an "uncontestable" policy. This suggested widespread fraud by Mutual in its business. On the same date, the trial court issued the search warrant.
When the state agents executed the warrant the next day, they discovered that completed or closed files were now located in another building, in the offices of Viatical Services, Inc., ("VSI"), a corporation that serviced the policies. Accordingly, an application for a new warrant was prepared to add the additional premises. Other than change of location, the affidavit covered the same facts to show probable cause as the prior affidavit on which the first search warrant was executed.
Both the investigator for the Department and an attorney representing the Statewide Prosecutor appeared before the trial court the following day. Also present were counsel representing both Mutual and VSI. At the outset the prosecutor objected to the court's conducting an adversary hearing, contending that Mutual and VSI had no standing to object to the court's entry of a search warrant. Nevertheless, the court proceeded with the hearing.
*562 Counsel for the corporation objected to the search warrant on the basis that the records requested included confidential medical records of persons whose lives were insured. A search warrant covering all of the 10,000 files would violate the right of privacy of persons who were not targets of the investigation, it claimed. Second, the seizure of all its files would render VSI unable to service the existing policies, including the timely payment of premiums. That would not only put Mutual and VSI out of business but could endanger the investors' security.
The state acknowledged that there was an issue of confidentiality of the medical records. However, it suggested that the court permit the state to seize the records and then seal them while the state complied with notifying the insureds. It noted, however, that although Mutual was the target of its investigation, all of the insureds could now be suspected of fraud. Additionally, the Department informed the court that, even though it did not see a problem with endangering the business of respondents where there was probable cause that the owners and employees were violating Florida law in utilizing deceptive practices, the Department could copy the seized files and return them.
Despite the court's finding of probable cause to issue the search warrant, the court ruled that it would order the seizure of only the sixteen files and seal them pending notification to the insured, with the defense permitted to copy the files so that the corporation could continue to service the policies. In addition, the court allowed the Department to place a monitor or auditor on the premises to insure that files were not altered. The court also directed the companies not to alter the files other than in the normal course of servicing them. Finally, the court's order directed the office of the Statewide Prosecutor to confer with counsel for the corporations to narrow the scope of the warrant's request for "business records," in light of the representation that voluminous records had already been reviewed by the Department pursuant to an earlier audit.
We first address the question of our jurisdiction. The state filed a petition for mandamus, which we have treated as a petition for certiorari. The petition seeks review of the order limiting the search warrant to permit seizure of only those files where fraud was already identified. The state also filed a second petition for certiorari on the ground that the trial court departed from the essential requirements of law in conducting an adversarial hearing prior to the issuance of the search warrant.
Pursuant to State v. Pettis, 520 So.2d 250, 253 (Fla.1988), we may entertain state petitions for certiorari from pretrial orders in criminal cases. Here there is no remedy to the state by appeal from the denial of a search warrant. Irreparable harm is shown because the state has been precluded from obtaining information connected with a criminal investigation where the court found probable cause for the issuance of the warrant. Thus, if the state shows a departure from the essential requirements of law, a writ should issue. What the trial court has done in effect is to suppress evidence prior to its seizure by a pre-seizure hearing. We frequently review suppression orders where the court has suppressed evidence in a post-seizure hearing. Review of such pretrial order is appealable. See Fla. R.App. P. 9.140(c)(1)(B). Because the state has no similar remedy from this pre-seizure hearing, we review it by certiorari.
As to the second petition regarding the adversarial hearing, we dismiss because the state did not show that in this case irreparable harm would occur. It has not made any claim that it was unable to present information to the judge due to the presence of the defendants. Moreover, because it had already executed the first search warrant, the element of surprise in executing any further warrants was gone. While we can find no authority *563 for allowing an adversarial hearing prior to the issuance of a search warrant,[1] which hearing may severely compromise a criminal investigation, we dismiss the writ for failure to show irreparable harm. See Bared & Co. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996). Nevertheless, despite our conclusion that the state has failed to show irreparable harm in this case, holding an adversarial hearing prior to the issuance of a search warrant is contrary to statute. See § 933.07, Fla. Stat. (1997). Pre-seizure hearings are "necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." Franks v. Delaware, 438 U.S. 154, 169, 98 S.Ct. 2674, 2683, 57 L.Ed.2d 667 (1978).
The issuance of search warrants is governed by section 933.07, Florida Statutes (1997), which provides:
[t]he judge, upon examination of the application and proofs submitted, if satisfied that probable cause exists for the issuing of the search warrant, shall thereupon issue a search warrant ... to bring the property ... before the magistrate or some other court having jurisdiction of the offense.
(Emphasis added). In this case, the judge stated repeatedly that he found that probable cause had been established for the seizure of all of the files, a factual determination to be made by the judge from the submissions. Although the random search of Mutual's files identified only sixteen in which fraud was apparent, this was twenty-two percent of the files reviewed and as such could be evidence of a pervasive pattern of fraudulent practices in the purchase and sale of these viatical settlements. See United States v. Hayes, 794 F.2d 1348, 1355 (9th Cir.1986), cert. denied, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987) (where doctor was suspected of illegally prescribing controlled substances, seizure of patient files was not limited to fifty-eight files identified by pharmacy records where court concluded that the fifty-eight cases could be fairly representative of more pervasive violations under the act). In United States v. Brien, 617 F.2d 299, 309 (1st Cir.), cert. denied, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980), a search warrant was held not to be overbroad where from 250 complaints regarding a commodities business it could fairly be inferred that the reported complaints were just the tip of the iceberg. Where there is a pervasive scheme to defraud, all of the business records of the enterprise may be seized. See id. Similarly, in the instant case, a significant percentage of the reviewed files showed fraud, and the trial court found probable cause to search all of the records. It departed from the essential requirements of law in failing to issue the search warrant as was required by statute.
The main concern motivating the court to limit the scope of the search warrant to those sixteen files already identified as containing evidence of fraud was the alleged privacy rights of the insureds in their medical records possibly contained in the files of Mutual or of VSI. If there were privacy rights which merited protection, then the court must fashion a remedy to protect the privacy rights of innocent third parties while still allowing the state to proceed with its criminal investigation.[2] *564 The state offered to seal the seized medical records until patient notification or a post-seizure hearing could be held. The court should have limited the seizure by allowing the records to be sealed, rather than precluding seizure of what it found probable cause to believe would contain evidence of criminal wrongdoing. We therefore grant the writ and remand with directions to issue the warrant on condition that the insured's medical records be sealed until a post-seizure hearing may be held on the issue of the right of privacy.
Although in State v. Rutherford, 707 So.2d 1129, 1131 (Fla. 4th DCA 1997), rev. denied, 718 So.2d 171 (Fla.1998), we held that a patient's medical records are protected under article I, section 23, of the Florida Constitution, the records sought to be produced in Rutherford were held by the health care provider, the hospital. In arguing that the right of privacy applies to protect the medical records of the insureds in the possession of Mutual, the respondent points to section 395.3025(4)(d), Florida Statutes (1997), which prohibits a licensed medical facility, such as a hospital, from disclosing patient records without consent, section 455.667(5)(c), which prohibits health care practitioners from disclosing patient records without consent, and section 381.004(3)(f), which precludes dissemination by a testing facility of HIV tests. However, none of those statutes, by their terms, would apply to Mutual or VSI.
In the instant case, in order to conduct a commercial transaction in which the insured sells the insurance policy for immediate cash, the insured must permit the viatical settlement company to review those medical records. An investor also may have the ability to review those records to ascertain the value of the policy as an investment. Furthermore, the statutes permit the Department of Insurance to review all of the documentation held by the viatical settlement company. See § 626.9922, Fla. Stat. (1997). Thus, the medical records of the patient are available for review by a variety of persons for the purposes of concluding and monitoring a commercial transaction. While we do not decide the issue because the insureds are not represented in this action, we question whether a right of privacy in one's medical records exists where that person's medical condition has become an essential condition of a commercial transaction, at least with respect to those persons involved in the transaction and those entities who may be charged with monitoring such transactions. Cf. A.B.C. v. XYZ Corp., 660 A.2d 1199, 1203, 282 N.J.Super. 494, 503 (1995) (questioning whether right of privacy covers the disclosure of personal embarrassing information where person chooses to litigate an issue). This includes the state in the instant case, which is investigating commercial fraud and deceptive practices of the viatical settlement company based upon information received from a statutorily authorized review by the Department.
Finally, the court apparently refused to permit the seizure of all of the records of Mutual and VSI because of concerns that the company's business may be harmed by having the policy files unavailable for servicing. It then directed *565 the Statewide Prosecutor to confer with Mutual and VSI to narrow the scope of documents to be searched. We entirely disapprove of any command to the state that it work with the target of its investigation to agree on the scope of a search warrant. That effectively gives the criminal suspect the right to refuse to be searched even where probable cause exists to justify it. In the instant case, the state agreed to copy the records and return them to Mutual and VSI within a very short period of time. This is perhaps more accommodating than the state had to be, but in any event rather than deny the search warrant, the judge should have allowed the seizure of the documents and required the state to return them within a specified period of time. In any event, seizure of all of the records of a business may be appropriate where probable cause is found to believe that the business entity is engaged in pervasive fraud. See Brien, 617 F.2d at 309.
For the foregoing reasons, we grant the writ and remand to the trial court to issue the search warrant in accordance with the conditions set forth in this opinion.
DELL and HAZOURI, JJ., concur.
NOTES
[1] The only case we could find dealt with seizure of materials in an obscenity prosecution. In Davison v. State, 251 So.2d 841, 843 (Fla. 1971), vacated on other grounds, 413 U.S. 915, 93 S.Ct. 3034, 37 L.Ed.2d 1037 (1973), the court held that neither the state or federal constitutions require judicially supervised hearings for determination of probable cause prior to the issuance of a search warrant.
[2] Of course, some of the third persons may not be "innocent" in that review of their medical records may reveal their participation in a fraudulent scheme of applying for life insurance without revealing a known terminal illness. However, in the instant case the target is Mutual, which is alleged to have knowingly purchased contestable policies and sold them to innocent investors as uncontestable policies. In Shaktman v. State, 553 So.2d 148 (Fla.1989), the court held that in order to justify intrusion in the private lives by use of a telephone pen register, the state must first have reasonable founded suspicion that the targeted telephone line was being used for a criminal purpose and second, that the least intrusive means have been employed. Applying that reasoning to the instant case, the state has developed probable cause that the targeted company (not the individuals) is being used for a criminal purpose of defrauding investors and second, that inspecting their records, including the medical records supplied by insureds to complete the commercial transaction, is the least intrusive method, in fact the only method, of establishing that criminal activity. That review of these records may implicate some insureds in criminal conduct is not different from the implication of unknown persons in criminal activity when a search warrant is executed against a home where drug activity is suspected, and agents find theretofore unknown persons engaging in drug activity on the premises leading to their arrest.