887 So.2d 387 (2004)
Rush LIMBAUGH, Petitioner,
v.
STATE of Florida, Respondent.
No. 4D03-4973.
District Court of Appeal of Florida, Fourth District.
October 6, 2004.
Order Denying Rehearing and Certifying Question November 17, 2004.
*389 Roy Black, Jackie Perczek and Christine Ng of Black, Srebnick, Kornspan & Stumpf, P.A., Miami, for petitioner.
Barry Krischer, State Attorney for the Fifteenth Circuit, and James L. Martz, Assistant State Attorney, West Palm Beach, for respondent.
Mary E. Baluss, Washington, D.C., and Brian A. Kahan of Kahan & Associates, P.L., Boca Raton, for Amici Curiae National Foundation for the Treatment of Pain, and Florida Pain Initiative.
Jon May of May & Cohen, P.A., Fort Lauderdale, Randall C. Marshall of ACLU Foundation of Florida, Inc., Miami, Professor Michael Masinter, Nova Southeastern University, Fort Lauderdale, and Robert C. Buschel of Buschel, Carter, Schwartzreich & Yates, Fort Lauderdale, Amicus Curiae American Civil Liberties Union of Florida, Inc.
Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, and Andrew Schlafly, AAPS General Counsel, New York, NY, for Amicus Curiae The Association of American Physicians & Surgeons, Inc.
FARMER, C.J.
In this petition for certiorari, we are asked to decide whether the authority of the State to seize medical records in a criminal investigation by search warrant is limited by a patient's right of privacy. We conclude that the State's authority to seize such records by a validly issued search warrant is not affected by any right of privacy in such records.
The background may be briefly sketched. Police received statements from two individuals that they had sold petitioner "large quantities" of Hydrocodone and Oxycontin "over the course of many years." Acting on this information, police obtained a list of petitioner's prescriptions from a local pharmacy. These records are described as showing that petitioner had obtained prescriptions for controlled substances from four different physicians within a five-month period. Police then began investigating whether petitioner should be charged with violating the "doctor shopping" statute.[1]
*390 Police prepared an affidavit and obtained search warrants. See § 933.07(1), Fla. Stat. (2003). The warrants described the items to be seized as:
"[R]ecords specifically and only pertaining to [petitioner] including the medical records, medical questionnaire, cash receipts, sections of appointment book pertaining to [petitioner], canceled checks, medical insurance forms submitted or prepared to be submitted to insurance companies, computerized records related to the ordering of narcotics, DEA prescriptions numbers and forms, records of dispersing or issuing prescriptions for controlled substances, written and or computerized pertaining only to [petitioner]."
In keeping with the actual text of the warrant application, we read the warrants as seeking only those medical records "related to the ordering of narcotics, DEA prescriptions numbers and forms, records of dispersing or issuing prescriptions for controlled substances, written and or computerized pertaining only to [petitioner]." A Judge issued the warrants after review of the affidavit. These warrants were directed to the offices of three physicians and a clinic (providers) from which petitioner had received medical care and services, including prescriptions.
According to petitioner, in producing the records none of the providers made any distinction as to which of their records pertained to prescriptions and which did not. In response to the warrants, all of the providers simply turned over to the police all of petitioner's medical records in their possession.
After police received the records, they placed them under seal, and the State Attorney sent the following notice to petitioner:
"The State is presently investigating a possible violation of Florida State Statute 893.13 against your client [petitioner]. Pursuant to Florida State Statute 395.3025(4)(d) and F.S.S. 933, the State has seized thru a lawfully obtained search warrant the medical records and/or files of your client.... This was done November 25, 2003.
"This letter will serve as notice to you, as council [sic] for [petitioner] that 10 days from the date of the same, the State will move to unseal those medical records and/or files which were seized on November 25, 2003, and sealed without viewing any of the contents in the presence of the administrator or doctor pending your opportunity to be heard on your clients right [sic] privacy issues, in reference to the ongoing investigation.
"This letter constitutes proper notice as contemplated by Florida State Statute 395.3025(4)(d).
"Any legal objection to this action must be submitted in writing to the undersigned prior to the expiration of the ten day period."
Petitioner's attorney responded by invoking all of his rights. He objected to the seizure and any review of the medical records. He specifically referred to a claimed right of privacy in personal medical affairs. Although no criminal charges had yet been filed against petitioner, he demanded that the matter be set for hearing before a Judge.
Petitioner then filed a petition for certiorari in the circuit court, praying that the court quash the search warrants and bar the State from again seizing his medical records on account of what he described as bad faith in seeking the warrants without prior notice to him. Ultimately a hearing was held before a Circuit Judge. Although *391 the Judge received extensive oral argument from petitioner's counsel, he refused to accept evidence and also denied a request for leave to file a written memorandum after the hearing. The court denied all relief. Petitioner then filed an appeal to this court, which we have treated as a petition for certiorari to review the decision of the circuit court.
Because the circuit court's jurisdiction of this case arose from a petition for certiorari, and our review here has been based not by appeal of right but only by certiorari, we briefly explain our jurisdiction. In this kind of second tier review, our jurisdiction is quite limited. See Combs v. State, 436 So.2d 93 (Fla.1983) (in second tier review, district courts should not be as concerned with mere existence of legal error as much as with seriousness of error and should be allowed a large degree of discretion so that they may judge each case individually); Haines City Community Dev. v. Heggs, 658 So.2d 523 (Fla.1995) (standard of review for certiorari in district court in reviewing order of circuit court acting in its review capacity is whether circuit court afforded procedural due process and whether circuit court applied correct law, which is synonymous with observing essential requirements of law); Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000) (cautioning district courts to be prudent and deliberate when deciding to exercise second tier review, but not so wary as to deprive litigants and the public of essential justice).
Petitioner contends that his constitutional right of privacy has been violated as a result of the issuance of the search warrants without any prior notice to him and an adversarial hearing to determine whether such warrants should have been issued. He argues that unless this court reviews the decision, his right of privacy will be lost without any appellate court ever considering the matter until the damage had long since been done. Owing to the nature of the right asserted, and the absence of any pending case against petitioner in which he might raise the issue, we deem the nature and context of the right asserted important enough to exercise our discretion in favor of review at this point. We deem it necessary to consider the underlying issue, namely whether Florida law recognizes a right of privacy in medical records that would limit the State's use of search warrants in regard to medical records in a criminal investigation.
Petitioner's primary argument is that this court should recognize a general rule that the State may not use search warrants to avoid a constitutional right of privacy in medical records. He asks us to hold that search warrants for medical records are subject to a right of privacy in the Florida Constitution. The provision he relies on says that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." Art. I, § 23, Fla. Const. (1980) (privacy amendment).
From its general text, one might have thought that article I, section 23, did have the effect of restricting the government's power to seize personal medical records, even under the separate constitutional article relating to searches and seizures. See Art. I, § 12, Fla. Const. ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the ... things to be seized ... and the nature of evidence to be obtained."). Because article I, section *392 23, lacks any stated authority to seize personal medical records merely because they are relevant, one might have supposed they would be immune even from search warrants.[2] Moreover, because the United States Constitution has been interpreted to exclude any right of privacy in search and seizure cases under the Fourth Amendment,[3] one might also suppose that the addition of a separate right of privacy to the Florida Constitution inaugurated specific privacy protection as to issues arising under article I, section 12.[4] These intuitions are not the law, however.
In 1982, the voters of Florida amended article I, section 12, on searches and seizures to conform its interpretation to the United States Supreme Court's construction of the comparable provision in the Fourth Amendment.[5] This "conformity amendment" had been proposed by the Florida Legislature to reverse the Florida Supreme Court's construction of article I, section 12, which among other things had refused to recognize a good faith exception to the warrant requirement that the United States Supreme Court had found in the Fourth Amendment.[6]
Since then the Florida Supreme Court has made clear that, as a result of the conformity amendment, the right of privacy in article I, section 23, has no application to searches and seizures complying with article I, section 12. In State v. Hume, 512 So.2d 185 (Fla.1987), the court said:
"right-of-privacy provision, article I, section 23, of the Florida Constitution, does not modify the applicability of article I, section 12, particularly since the people adopted section 23 prior to the present section 12." *393 512 So.2d at 188. One year later, the court said that it had "rejected the contention that our right-of-privacy provision under article I, section 23, of the Florida Constitution prohibited the introduction of [defendant's conversation in his home with an undercover police officer]." Madsen v. State, 521 So.2d 110, 110 (Fla.1988). In State v. Hester, 618 So.2d 1365 (Fla.1993), the court restated that "our right of privacy provision, article I, section 23, does not modify the applicability of article I, section 12, particularly since section 23 was adopted prior to the present section 12." 618 So.2d at 1366; see also State v. Jimeno, 588 So.2d 233 (Fla.1991) (same). Because the privacy amendment came before the conformity amendment, the privacy amendment does not apply to cases to which article I, section 12, is applicable. Logically, therefore, any statutes enacted after the adoption of the conformity amendment could have no different application in the context of search and seizure than article I, section 23, itself does.
Nevertheless, petitioner reads a right of privacy restriction into the State's power to seize medical records by search warrant. He implicitly acknowledges that search warrants are designed to seize relevant evidence upon a showing of probable cause under article I, section 12. Notwithstanding that recognition, however, he concludes that search warrants are not sufficient to protect his privacy interests in items protected by the constitution.
Petitioner also relies on Florida's medical records subpoena statutes in arguing that he was entitled to notice and a hearing before the State could seize and review his medical records.[7] One statute, found in chapter 395, deals with the regulation of hospitals. The other, found in chapter 456, generally regulates all health care providers other than hospitals. Both statutes were originally passed at the same time in a different form. See Ch. 83-108, Laws of Fla. (introducing notice requirement for issuance of subpoenas for medical records). It is important to note that the Legislature enacted these statutes one year after the conformity amendment was adopted.
Although these are separate statutes, their text is identical in substance. First, they require health care providers to recognize a right of privacy in medical records. Second, they establish that outsiders may not subpoena such records from medical providers without prior notice to the patient. It is true that the subpoena provision is a subdivision of the two statutes and that they are not labeled as subpoena statutes. We also recognize that the primary thrust of these two statutes is to require health care providers to *394 recognize their patient's right of privacy in the records they create and maintain. Yet, for purposes of this case, the operative effect of the statutes really lies only in the subdivisions limiting the use of subpoenas for medical records.[8]
We do not believe the Legislature's purpose in enacting these subpoena statutes had anything to do with search warrants, a term that appears nowhere within either of them. Their rather limited purpose was to correct a practice in the use of subpoenas for medical records in both civil and criminal cases by private and governmental lawyers. Before these statutes were adopted, subpoenas for discovery and trial were readily obtainable by any attorney without judicial supervision. The attorney could serve a subpoena without any prior notice or permission. Usually the records were not in the possession of the patient, who might not even be a formal party in the case. Private medical records of this kind are usually kept by third party providers of medical services. Under this old procedure, attorneys could obtain subpoenas merely by asking the Clerk for them. In fact, attorneys could (and did) carry subpoenas around in their briefcases, issued in blank by the Clerk for this purpose. This practice was in wide-spread use. These statutes were apparently intended only to alter this former use of subpoenas where medical records are concerned. Since their enactment, the Legislature has amended them several times, but not in any way material to the issue we face today. It should be carefully noted that these subpoena statutes were adopted one year after the people of Florida adopted the conformity amendment to our State Constitution.
Because this case involves search warrants, not subpoenas, the issue really turns on the content of the search warrant statutes.[9] Nothing in any statute purports to limit the use of search warrants in regard to medical records. Section 933.02(3) expresses no limitations as to the kind of property that may be had by a search warrant. To the contrary, section 933.02(3)'s term any property self-evidently includes medical records because of the absence of any limiting text. And the presence of one actual limitation in subsection (2) of 933.07(1) demonstrates beyond any quibble that when the Legislature proposes to restrict search warrants as to specified property it will say so in the statute.
As we said, the statutes affirming a right of privacy in medical records apply only to subpoenas. Therefore, we take the omission of any reference to search warrants as a plain legislative decision that search warrants for medical records are not affected by these provisions. See Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla.1952) ("The legislature made one exception to the precise language of the statute of limitations. We apprehend that had the legislature intended to establish other exceptions it would have done so clearly and unequivocally.").[10] In short, by their *395 clear terms, neither of the two subpoena statutes on which petitioner relies would seem to have any application when the State proceeds by search warrant. Yet petitioner argues that Judges should interpret them to have that effect.
In construing statutes, Judges are not free to add or delete provisions from plain statutory text. See McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998) (when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning). When engaged outside of the common law, as here, Judges are not meant to be fixers of statutory omissions and have no authority to fill statutory voids or enlarge the domain of statutes already adopted. Holly v. Auld, 450 So.2d 217 (Fla.1984) (courts lack power to construe clear statute to extend, modify, or limit, express terms or reasonable and obvious implications; to do so would be abrogation of legislative power). This means that Judges are not free to reconstruct statutes dealing only with subpoenas and extend them to cover search warrants as well.
The issuance of these search warrants was based on a finding by a Judge that the medical records to be seized were relevant to the commission of a felony being investigated by the State. § 933.02(3), Fla. Stat. (2003) ("Upon proper affidavits being made, a search warrant may be issued ... when any property constitutes evidence relevant [e.s.] to proving that a felony has been committed...."). The State had the burden of satisfying the Judge that there was probable cause that petitioner's medical records were relevant to the commission of a crime as to which there was also some evidence of his involvement. The State satisfied that burden because the Judge signed the search warrant, and nothing we have been shown suggests any error in that regard.
If these subpoena statutes were nevertheless somehow applicable to search warrants, in one real sense they would be unnecessarily redundant. Except for prior notice, the greater showing required by search warrants  probable cause and relevancy  exceeds that which these subpoena statutes require. If a mere reasonable suspicion is constitutionally sufficient for the State to seize medical records by subpoena, obviously the probable cause necessary for the issuance of a search warrant affords even greater protection. See State v. Rivers, 787 So.2d 952 (Fla. 2d DCA 2001) (constitutional right of privacy in medical records overcome by State's showing of reasonable suspicion for issuance of investigative subpoena).
Search warrants have generally not required prior notice because of the understandable fear that the property's custodian might cause the evidence to disappear if he knew the State was seeking to seize it in a criminal investigation. Indeed, in State v. Viatical Services Inc., 741 So.2d 560, 562-3 (Fla. 4th DCA 1999), Judge Warner noted the absence of any authority for an adversary hearing before the issuance of a search warrant and recognized that a criminal investigation might actually be impaired by such a hearing. That is precisely the argument made by the State in this case in using a search warrant rather than an investigative subpoena. Such decisions are well within prosecutorial discretion, and no one here has made a sufficient showing otherwise.
In deciding to employ search warrants, rather than subpoenas, to reach petitioner's medical records, the State cast a wary eye on our decision in Viatical. There, the State had obtained a search warrant to seize a viatical settlement company's files *396 in connection with a fraud investigation. Along with business and financial records, the files contained the confidential medical records of persons who were insured by life insurance policies. Counsel for the company under investigation objected to the issuance of a search warrant, asserting the right of privacy in the medical records of the insureds, who were not targets of the investigation. The trial court decided to hold an adversarial hearing prior to issuing the warrant. In granting the State certiorari relief, we held that it was improper to hold an adversarial hearing before the warrant could be issued, saying:
"While we can find no authority for allowing an adversarial hearing prior to the issuance of a search warrant, which hearing may severely compromise a criminal investigation, we dismiss the writ for failure to show irreparable harm. Nevertheless, despite our conclusion that the state has failed to show irreparable harm in this case, holding an adversarial hearing prior to the issuance of a search warrant is contrary to statute. See § 933.07, Fla. Stat. (1997). Pre-seizure hearings are `necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence.'" [e.s., c.o.]
741 So.2d at 562-63.
Although the State read Viatical to support the issuance of warrants for medical records without a pre-seizure hearing, it was apparently concerned about language in Viatical that established certain procedures for protecting the privacy interests in medical records post-seizure. In Viatical, we directed the trial court on remand to "issue the warrant on condition that the insured's medical records be sealed until a post-seizure hearing may be held on the issue of the right to privacy." 741 So.2d at 564.
In this case, and in an abundance of caution, the State followed the above procedure described in Viatical. After seizing the records, it kept the records sealed, then notified petitioner of the seizure and his opportunity to be heard on the privacy issue before the seized records could be unsealed. Though commendable, these steps were not required. In Viatical, we stated that when there are privacy rights which merit protection, the court must fashion a remedy to protect them. In that case, however, we were concerned about protecting the privacy rights of innocent third parties. Here, petitioner is the target of the criminal investigation, not a third party not implicated in the crimes under investigation. The Judge who reviewed the warrant application's supporting affidavits found probable cause to believe that the medical records contained evidence of criminal wrongdoing. In issuing the warrant, the Judge impliedly determined that the privacy rights of petitioner were outweighed by the State's legitimate need to secure the information in furtherance of its investigation and prosecution of the suspected crimes. Thus, the circuit court was not obligated to do anything further before allowing the State to review the seized records.
Obviously, Viatical does not support a conclusion that the constitutional right of privacy has any limitation on the use of search warrants for medical records. To hold that it does would conflict with the supreme court's holdings that the right of privacy provision has no application to constitutionally valid search and seizure. To repeat what we have already shown, the supreme court has made clear that the privacy amendment does not "modify the applicability [e.s.] of article I, section 12." Hume, 512 So.2d at 188. This means that the applicability of article I, section 12, is not displaced or affected by the privacy *397 amendment. The propriety of a search warrant is measured by the requirements of article I, section 12, not by article I, section 23. The supreme court's holdings in Hume-Madsen-Hester make clear that the constitutional right of privacy does not further restrict the State's powers of search and seizure in the criminal context beyond those requirements imposed by article I, section 12, and the Fourth Amendment. We know from the addition of the citrus canker provision to section 933.07(2) that the Legislature is aware of its authority to add burdens in obtaining search warrants. It needs repeating that it simply has not done so for medical records. We therefore cannot agree that article I, section 23, has any affect on the State's authority over items properly seized by a valid search warrant, or that it requires any further post-seizure hearing as to general relevancy.
Petitioner places heavy reliance on State v. Johnson, 814 So.2d 390 (Fla.2002), to support a privacy limitation on search warrants for medical records. The precise issue the court faced there was whether the exclusionary rule should bar the State from attempting to correct a failure to give prior notice of the issuance of a subpoena to seize medical records. The State did not proceed by search warrant in that case, as it has done here. Indeed, as the court itself explained:
"The issues before us are whether the State can avoid the procedural requirements of section 395.3025(4)(d) by use of its investigative subpoena power, and if not, what sanction is to be imposed when the State does not comply with these procedural requirements. Based on the clear language of the statute, we hold that the state attorney's subpoena power under section 27.04, Florida Statutes (1997), cannot override the notice requirement of section 395.3025(4)(d)." [e.s.]
814 So.2d at 393. There is not a single word anywhere in the opinion suggesting or implying that the holding also applies to search warrants. To extend this holding on the use of subpoenas to search warrants would be, well, unwarranted.
Petitioner seems to suggest that the issuing Judge's determination of probable cause, and of the relevancy of his medical records to the crime being investigated, is somehow insufficient. He argues that before any warrant could be issued we should require an adversarial hearing, with prior notice to petitioner. We think the issuing Judge's determination is all that is required under article I, section 12. Nothing in the constitution or search warrant statutes requires a post-seizure hearing to reconsider the relevancy or probable cause determinations made by the issuing Judge. This would amount to a judicially created limitation on search warrants.
Although we are urged to engage in statutory construction to deduce some unarticulated legislative purpose limiting warrants, the supreme court has made clear that there must be a "hopeless inconsistency" between statutes before the rules of construction  such as in pari materia  may be employed to defeat the plain language of one in favor of the other. State v. Parsons, 569 So.2d 437 (Fla.1990) ("There first must be a hopeless inconsistency between the two statutes before rules of construction are applied to defeat the express language of one of those statutes."); Starr Tyme Inc. v. Cohen, 659 So.2d 1064 (Fla.1995) (same). In other words, it is improper to resort to the canons of statutory construction when the texts of different statutes are plain and unambiguous. See A.R. Douglass Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (Fla.1931) ("The intention and meaning of the Legislature must primarily *398 be determined from the language of the statute itself and not from conjectures aliunde. When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."). This is simply another application of the principle that Judges are not empowered to add or remove words or plain meaning from statutes. Holly v. Auld, 450 So.2d at 219 (not court's duty or prerogative to modify or shade clearly expressed legislative intent in order to uphold policy favored by the court).
Accordingly, we hold that the constitutional right of privacy in medical records is not implicated by the State's seizure and review of medical records under a valid search warrant without prior notice or hearing. We therefore deny the writ. Our denial, however, is without prejudice to petitioner to seek review by the issuing Judge to insure that all the records produced fall within the scope of the warrants,[11] and to seek other protective relief to prevent improper disclosures to third parties of records irrelevant to this prosecution.
TAYLOR, J., concurs.
MAY, J., concurs in part and dissents in part with opinion.
MAY, J., concurring in part and dissenting in part.
I concur in that part of the majority's opinion holding the State may use a search warrant to search for and seize a person's medical records. I dissent from that part of the opinion that turns a blind eye to section 23, article I of the Florida Constitution and the age-old protection afforded those records.
While using eight pages to hold that section 23 provides no protection, the majority ends the opinion with the following: "Our denial, however, is without prejudice to petitioner to seek review by the issuing Judge to insure that all the records produced fall within the scope of the warrants, ... and to seek other protective relief to prevent improper disclosures to third parties of records irrelevant to this prosecution." Slip Op. at 8. (Footnote omitted.) This is the very review sought by the petitioner in this case, which is why I would grant the petition. The majority holds there is no right to protection of one's medical records when a search warrant is issued, yet fashions its own form of relief that I find evident in Florida's Constitution and the statutes designed to protect a person's medical records.
Unlike the majority, I see a distinction between the right to search and seize medical records, which is controlled by article I, section 12 of the Florida Constitution and "disclosure" of those records, which I believe is controlled by section 23.
With regard to search and seizure, section 933.07(1), Florida Statutes (2003), authorizes the search of property or persons described for the purpose of bringing the property or person(s) before a magistrate or other court. The statute does not distinguish among types of property. There is no special exception for medical records.
When the legislature enacted sections 395.3025 and 456.057, Florida Statutes (2003) to address the "disclosure" of medical records, it neither referenced the warrant statute in them nor amended the *399 warrant statute to reference the medical records statutes.
However, in response to the citrus canker crisis in 2002, the legislature amended the warrant statute to require the court to "conduct a court proceeding prior to the issuance of such search warrant upon reasonable notice" and to "receive, hear, and determine any objections by property owners to the issuance of such search warrant." See § 933.07(2), Fla. Stat. (2003). No similar requirement was added to the warrant statute with regard to medical records.
Thus, I conclude, as does the majority, that search warrants may be used to search and seize medical records, pursuant to section 12. Indeed, common sense suggests that law enforcement would itself be handcuffed if required to give notice to a person before lawfully "seizing" evidence. However, the warrant statute simply does not address the issue of "disclosure."
This is the point at which I no longer see "eye to eye" with the majority. The special nature of the doctor-patient relationship dates back 2400 years to the age of Hippocrates. From that point forward, medical records have been the focus of constitutional, statutory, and regulatory protections. See, e.g., Art. I, § 23, Fla. Const. See also §§ 395.3025 and 456.057, Fla. Stat. (2003); Health Insurance Portability and Accountability Act [HIPPA], 42 U.S.C.A. § 210 et seq. (1996); 10 U.S.C.A. § 1102 (2004); 38 U.S.C.A. § 7332 (2004); 42 C.F.R. §§ 405.2138, 405.2139, 417.106, 417.486 (2004); Wanda E. Wakefield, J.D., Annotation, Physician-Patient Privilege as Extending to Patient's Medical or Hospital Records, 10 A.L.R.4th 552 (1981). Yet, the majority cannot see any constitutional or statutory basis to provide a meaningful post-seizure hearing to insure that only those records "relevant" to the criminal investigation are "disclosed."
Perhaps the first indication of the privacy interest in medical records is found in the Hippocratic Oath. It provides in part: "What I may see or hear in the course of the treatment or even outside of the treatment in regard to the life of men, which on no account ought to be spread abroad, I will keep to myself, holding such things shameful to be spoken about." See Hippocrates, Physician's Oath, STEADMAN'S MEDICAL DICTIONARY 579 (22d ed.1972).
Centuries later, the citizens of Florida would amend their constitution to add section 23. It provides for the "right to be let alone and free from governmental intrusion into the person's private life...." Art. I., § 23, Fla. Const. And, while the majority points out that our supreme court has held section 23 does not affect search and seizure under section 12, it seemingly overlooks the court's recognition that medical records fall within the right to privacy afforded by section 23. State v. Johnson, 814 So.2d 390 (Fla.2002).
Our legislature has consistently protected medical records. Most significantly, sections 395.3025 and 456.057 specifically address the "disclosure" of medical records. The majority suggests these statutes are irrelevant to the issue before the Court because they were only intended to relate to the issuance of subpoenas. Op. at 395. I disagree.
I know the difference between a subpoena and a warrant. I also recognize the protective mechanism devised by the legislature to prevent unwarranted "disclosure" of medical records. See §§ 395.3025 and 456.057, Fla. Stat. (2003). Our supreme court has clearly indicated the privacy interest in medical records trumps the State's investigative subpoena powers. Johnson, 814 So.2d 390. In doing so, the Court upheld the privacy interest in a *400 person's medical records and continued to afford meaning to section 23 of the Florida Constitution in the face of the State's right to investigate criminal activity. I would do the same here.
Our legislature continued to protect medical records in legislation to address the over-prescription of drugs by a doctor. Those statutes provide for a warrant to search the doctor's office, but patient's medical records are obtainable only by consent or through a subpoena issued pursuant to section 456.057.[12]See §§ 458.341 and 458.343, Fla. Stat. (2003).
Perhaps the most recent reminder of the importance of a person's privacy interest in medical records can be found in Congress's amendments to HIPPA. See Health Insurance Portability and Accountability Act [HIPPA], 42 U.S.C.A. § 210 et seq. (1996). The amendments further demonstrate the trend to enhance, not eliminate, the privacy afforded to patients and their medical records.
In State v. Viatical Services, Inc., 741 So.2d 560 (Fla. 4th DCA 1999), this court reviewed the privacy interest in medical records in the context of a search warrant. This court was asked to balance the same competing interests present in this case. We held the trial court "should have limited the seizure by allowing the records to be sealed, rather than precluding seizure of what it found probable cause to believe would contain evidence of criminal wrongdoing." Id. at 564. We directed the trial court "to issue the warrant on condition that the insured's medical records be sealed until a post-seizure hearing may be held on the issue of the right of privacy." Id.
According to the majority, Viatical does not support a conclusion that the constitutional right of privacy has any limitation on the use of search warrants for medical records. Op. at 396. I agree. What Viatical does support, however, is that medical records are protected. They should be afforded that protection by the process outlined in Viatical.[13] The common thread woven throughout these statutes and the cases interpreting them is the privacy interest in medical records. Medical records fall within a sphere of privacy afforded by section 23.[14]Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994) (followed by Ussery v. State, 654 So.2d 561 (Fla. 4th DCA 1995)). Whether they are obtained by means of a subpoena or a warrant, their protected status remains the same.
The simple fact remains  our legislature has mandated greater protection for a person's medical records than other types of property. That protection is found under the statutory headings of "confidentiality" and "patient's records." See §§ 395.3025 and 456.057, Fla. Stat. (2003). I would therefore focus on the confidentiality and *401 privacy interests in these medical records statutes rather than the subpoena process they employ.
Our task should be to construe and harmonize competing statutory provisions. Mann v. Goodyear Tire & Rubber Co., 300 So.2d 666 (Fla.1974); Wilensky v. Fields, 267 So.2d 1 (Fla.1972); see also First Mortg. Corp. of Vero Beach v. Stellmon, 170 So.2d 302 (Fla. 2d DCA 1964) (statutes should be construed so that all parts are meaningful). We should not ignore one provision simply to enforce the other. Howarth v. City of DeLand, 117 Fla. 692, 158 So. 294, 298 (1934).
Recognizing the right to privacy in medical records and ensuring only those relevant to the crime under investigation are "disclosed" in the least intrusive manner does not engraft a restriction on the State's power of search and seizure.[15] For if not the court system, who will give meaning to section 23? See John Sanchez, Constitutional Privacy in Florida: Between the Idea and the Reality Falls the Shadow, 18 NOVA L. REV. 775 (1994).
Warrants are a means by which the State may "search" and "seize" relevant evidence when probable cause exists to believe that a crime has been committed. They were not designed to set the parameters of "disclosure" of items otherwise protected by our constitution. A magistrate's determination of what might appear relevant at the time a warrant is issued is simply insufficient to protect an individual's right to privacy in their medical records. Only when the records have actually been seized can a full, fair, and specific determination of relevancy be made.
In this case, the warrant requested "medical records," not medical records related to prescriptions. The medical providers, professionals in medicine, are but lay persons in the law. They bundled up all of the medical records, even those irrelevant to the crime under investigation, as the majority acknowledges, and turned them over to the State. If we simply deny the writ, there is no protection afforded the petitioner. Once disclosed, the petitioner's privacy interest in his medical records is forever lost. While there is value in a post-seizure hearing, there is no value in a post-"disclosure" hearing.
In my view, the hearing afforded the petitioner did not allow the parties to address significant issues before "disclosure" was ordered. This is due in part to the initial positions taken by the parties, each asserting the dominance of either the medical records or warrant statute. They were unable to reach the real issue  "disclosure." A meaningful hearing on the issue of "disclosure" should include an in camera review of the records seized to determine their relevance and a determination as to whom the relevant records can be disclosed.
I dissent therefore from the majority's decision to keep its "Eyes Wide Shut" to the right to privacy in a person's medical records. I would grant the petition, issue the writ, quash the order of disclosure, and remand the case to the trial court to determine the relevancy of the records seized and to whom, if anyone, those records may be "disclosed." The doctor shopping statute speaks in terms of a patient's obligation to inform his doctors as to whether "controlled substances or a prescription *402 for a controlled substance of like therapeutic use from another practitioner" has occurred within the previous 30 days. See § 893.13(7)(a)(8), Fla. Stat. (2003). Thus, the details of petitioner's medical condition and treatment unrelated to information concerning disclosure of other prescriptions are not relevant and should not be disclosed.[16]

ON MOTION FOR REHEARING, MOTION FOR REHEARING EN BANC, AND CERTIFICATION
PER CURIAM.
We deny all rehearing but certify the following question to the Supreme Court:
Do §§ 395.3025(4) and 456.057(5)(a) bar the State from obtaining a search warrant to seize and inspect a patient's medical records without providing the patient notice and a prior hearing to oppose the seizure and inspection?
FARMER, C.J., TAYLOR and MAY, JJ., concur.
NOTES
[1] See § 893.13(7)(a)8, Fla. Stat. (2003) ("It is unlawful for any person ... [t]o withhold information from a practitioner from whom the person seeks to obtain a controlled substance or a prescription for a controlled substance that the person making the request has received a controlled substance or a prescription for a controlled substance of like therapeutic use from another practitioner within the previous 30 days." [e.s.]).
[2] Cf. John Sanchez, Constitutional Privacy in Florida: Between the Idea and the Reality Falls the Shadow, 18 NOVA L.REV. 775 (1994) (arguing that Florida courts have given article I, section 23, only grudging effect); Rasmussen v. S. Fla. Blood Serv. Inc., 500 So.2d 533 (Fla.1987) (privacy interests of blood donors defeated AIDS victim's claim to subpoena names and addresses of blood donors who may have contributed the tainted blood); Atwell v. Sacred Heart Hosp., 520 So.2d 30 (Fla.1988) (natural child who was not formally adopted by family that raised him entitled to access to hospital record of his birth even though name of birth mother therein revealed).
[3] See U.S. Const., Amend. iv ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("[T]he Fourth Amendment cannot be translated into a general constitutional `right to privacy.' That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection of a person's general right to privacy  his right to be let alone by other people  is, like the protection of his property and of his very life, left largely to the law of the individual States.").
[4] In re T.W., 551 So.2d 1186, 1191-92 (Fla.1989) ("Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.").
[5] See Art. I, § 12, Fla. Const. (1982) (adding the following: "This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.").
[6] See House Joint Resolution No. 31-H (June 24, 1982).
[7] See § 395.3025(4)(d), Fla. Stat. (2003) ("Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent to ... [i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative."); § 456.057(5)(a) 3, Fla. Stat. (2003) ("Except as otherwise provided in this section and in s. 440.13(4)(c), such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization... [i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records."). [hereinafter referred to as subpoena statutes]
[8] And so, when we refer to the medical records subpoena statutes, or just the subpoena statutes, we refer only to the subdivisions dealing with subpoenas of medical records.
[9] See § 933.07(1), Fla. Stat. (2003) (providing for issuance of search warrants); § 933.02(3), Fla. Stat. (2003) ("Upon proper affidavits being made, a search warrant may be issued ... when any property [e.s.] constitutes evidence relevant to proving that a felony has been committed....").
[10] See also State v. Tsavaris, 394 So.2d 418, 426 (Fla.1981)(distinguishing between search warrants and subpoenas and holding that requirements of Fourth Amendment apply to subpoenas in criminal case only to ensure that breadth of subpoena is reasonable).
[11] See § 933.14(1), Fla. Stat. (2003) (issuing Judge may order property seized by warrant returned where the property delivered up is "not the same as that described in the warrant").
[12] The majority acknowledges that these statutes were enacted subsequent to the constitutional amendment to section 12. I take this as an indication that the legislature still holds medical records in a privileged category of their own.
[13] The majority also distinguishes Viatical by suggesting it dealt with innocent third parties as opposed to the innocent (until proven guilty) first party involved in this case. Op. at 396. In my view, that is a distinction without a difference as relates to a person's right to privacy under section 23.
[14] As Justice Arthur Goldberg once wrote while discussing the right to privacy under the U.S. Constitution, "the right of privacy is a fundamental personal right, emanating `from the totality of the constitutional scheme under which we live.'" Griswold v. Connecticut, 381 U.S. 479, 494, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring (quoting Poe v. Ullman, 367 U.S. 497, 521, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961))).
[15] I find the majority's reliance on State v. Hume, 512 So.2d 185 (Fla.1987), Madsen v. State, 521 So.2d 110 (Fla.1988), and State v. Hester, 618 So.2d 1365 (Fla.1993), to avoid the import of section 23, to be misplaced. Each of those cases dealt with whether the State had properly seized evidence. Not one of them dealt with the "disclosure" of otherwise privileged medical records.
[16] It would also seem advisable that when medical records are the subject of a search warrant, it would be a better practice for the State to keep the warrant and the accompanying affidavit under seal until an impartial magistrate is able to determine relevancy. Only in this manner can the underlying philosophy of section 23 be guaranteed.