COHEN, J.
The State appeals a nonfinal order granting Constance Carter’s motion to suppress evidence. Carter had moved to suppress her statement recorded by law enforcement, all medical information pertaining to both herself and her son (the victim), and all statements she made to medical personnel at the hospital. Carter successfully argued that the statements and records were private medical records obtained without consent, and over her objection, both on her own behalf and on the victim’s behalf in her capacity as his guardian. A motion to suppress is a mixed question of law and fact, and we review the trial court’s application of the law to the facts de novo. See Seibert v. State, 923 So.2d 460, 468 (Fla.2006); State v. Reaves, 15 So.3d 784, 786 (Fla. 5th DCA 2009). We affirm in part and reverse in part.
Carter was charged with attempted first-degree murder of her forty-three-year-old son, who suffers from cerebral palsy and is severely developmentally disabled. At the time, Carter was the victim’s guardian.[1] Carter allegedly gave the victim a large amount of prescription narcotics and also took them herself in an apparent murder/suicide attempt. Carter and the victim were taken to the hospital where both underwent treatment and sur *1030 vived. Carter told hospital personnel that she had given the victim Valium and Flex-eril. When informed by hospital personnel that he was going to survive, Carter allegedly made a statement to the effect that she had “failed ... I didn’t succeed.” Based on Carter’s statements and the victim’s condition, hospital personnel notified law enforcement of the circumstances.[2]
Detective Daley responded to the hospital to investigate. There is no dispute that Carter, when advised of her Miranda rights,[3] informed Daley that she wanted to speak to a lawyer. The trial court found that Daley did not honor Carter’s request and continued to attempt to question Carter.[4] We find no error in the trial court’s decision to suppress Carter’s recorded statements.
Likewise, with respect to Carter’s own medical records, we agree with the trial court that the police violated the medical records statute, and her medical records should be suppressed. The State failed to make any timely attempt to comply with section 395.3025(4)(d), Florida Statutes (2013), which requires notice and a subpoena before disclosing a defendant’s medical records. Under Florida law, statements to medical professionals are considered “medical records” and are covered by the medical professional-patient privilege. Section 456.057(7)(c), Florida Statutes (2013), explains that “[(Information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential.” This statutory language encompasses many forms of information and creates a broad privilege. See State v. Sun, 82 So.3d 866, 871-73 (Fla. 4th DCA 2011). Thus, we believe the oral statements about her medical condition made by Carter to hospital personnel fall squarely within the protection of the statutory privilege, and the State should have complied with the statute before seeking the records, which it failed to do. Nor did the State attempt to secure Carter’s medical records by obtaining a search warrant, the other available means for law enforcement to obtain medical records. See Limbaugh v. State, 887 So.2d 387, 389 (Fla. 4th DCA 2004). We therefore affirm the suppression of Carter’s medical records. See Mullis v. State, 79 So.3d 747, 754 (Fla. 2d DCA 2011) (suppressing reports related to defendant’s examination and treatment obtained from defendant’s doctors where the detective made no attempt to comply with section 456.057(7)(a), (c)).
However, we reverse the trial court’s suppression of certain statements Carter made to medical personnel at the hospital, and of the victim’s medical records. Section 456.057(6) defines medical records as, “reports and records relating to ... examination or treatment.” Carter’s statement to the nurse that “she had failed,” an apparent reference to her attempt to take the victim’s life, was unrelated to her examination and treatment and therefore not a “medical record” pursuant to section 456.057(6).
Turning to the issue of the victim’s medical records, the State argues the exclusionary rule should not prevent it from using his medical records, citing Phillips *1031 v. Ficarra, 618 So.2d 312, 313 (Fla. 4th DCA 1993). Ficarra held, in a civil case, the decision to strike testimony should be based on “the extent of the violation, its willfulness, and its degree of harm to the patient.” Id. at 314. We agree that application of the exclusionary rule to the victim’s medical records was improper. Section 415.1034, Florida Statutes (2013), creates a duty for medical personnel to report abuse of vulnerable adults to the Department of Children and Families. The same requirement applies to suspected child abuse and neglect under section 39.201, Florida Statutes (2013). These mandatory reporting requirements necessitate communication between medical personnel — often the first to learn of abuse — and law enforcement officers, who depend on the public for information. While we do not minimize the importance of privacy in a patient’s medical records, we do take seriously the responsibility of law enforcement to the public, particularly in investigating reports of harm to our most vulnerable citizens. It defies logic that an alleged perpetrator of abuse, neglect, or as in the instant case, attempted homicide, can use section 456.057 to shield their conduct merely because the victim was their child or ward. We do not believe a broad, formalistic application of the exclusionary rule should preempt good-faith efforts by law enforcement to investigate reported abuse. The United States Supreme Court has stated: “[T]he harsh sanction of exclusion ‘should not be applied to deter objectively reasonable law enforcement activity.’ ” Davis v. United States, 564 U.S. 229, -, 131 S.Ct. 2419, 2429, 180 L.Ed.2d 285 (2011) (quoting United States v. Leon, 468 U.S. 897, 919, - 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). While applying the exclusionary rule may serve to protect the statutory right of privacy in one’s own medical records from intrusion by the State, we do not believe that, under the circumstances, its application in this case is appropriate.
Additionally, the medical professional-patient privilege is intended to protect the privacy of the patient, not the guardian. A guardian cannot rely on the protection of even a powerful and long-standing privilege when the privilege belongs to the ward and is counter to the ward’s interests. See Tripp v. Salkovitz, 919 So.2d 716, 718-19 (Fla. 2d DCA 2006) (holding that the guardian could not invoke attorney-client privilege to protect all communication with its attorney in a breach of fiduciary duty action); see also Jacob v. Barton, 877 So.2d 935, 937 (Fla. 2d DCA 2004) (reaching the same result against a trustee in the interest of the beneficiary). Carter’s motivation was not to protect the victim’s interests, but rather to shield her own misdeeds.[5]
Accordingly, we reverse the suppression of Carter’s statements regarding matters unrelated to the examination and treatment of either Carter or the victim. We also reverse the suppression of the victim’s medical records.
AFFIRMED IN PART and REVERSED IN PART.
ORFINGER and LAMBERT, JJ., concur.

. The record reflects the appointment of a new guardian prior to the filing of her motion to suppress.

. Under section 415.1034, Florida Statutes (2013), the hospital had a duty to report suspected abuse of a vulnerable adult to the central abuse hotline.

. Miranda v. Arizona, 384 U.S. 436, 444-45, 8F6 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.The audio recording of that interrogation was virtually unintelligible and was characterized by the trial judge as incomprehensible ramblings.

. Carter asserted the victim's right to privacy in her capacity as his former guardian. However, at the time Carter sought suppression of the victim's medical records, she had been removed as guardian by a probate court judge. Because the issue was not raised in the record before us, we decline to address whether Carter lacked standing to assert the statutory privilege under section 456.057 on behalf of the victim.