WALLACE, Judge.
 

 Scott Lee Mullís appeals his judgment and sentences for five counts of obtaining a controlled substance by withholding information in violation of section 893.13(7)(a)(8), Florida Statutes (2008), fol
 
 *749
 
 lowing his guilty plea. On appeal, Mr. Mullis challenges the denial of his motion to suppress his pharmacy records and statements obtained from his doctors or their employees.
 
 [1]
 
 A detective obtained the pharmacy records and statements during an investigation that took place before Mr. Mullis’s arrest on the charges of withholding information. We conclude that the detective properly obtained Mr. Mullis’s pharmacy records. But for the reasons discussed below, we conclude that the detective’s conduct in obtaining the statements from Mr. Mullis’s doctors violated section 456.057(7)(a), Florida Statutes (2008
 
 &
 
 2009), and Mr. Mullis’s right of privacy under article 1, section 23, of the Florida Constitution. Thus we reverse the order on review to the extent that it denied suppression of the statements and remand for further proceedings consistent with this opinion.
 

 I. THE FACTS ELICITED AT THE HEARING ON THE MOTION TO SUPPRESS
 

 Douglas Fowler, a narcotics investigator for the City of Temple Terrace, decided to investigate Mr. Mullis for possible “doctor shopping”
 
 [2]
 
 after receiving information about Mr. Mullis from another officer. Detective Fowler initiated his investigation by sending a blast fax to approximately eighty pharmacies, inquiring whether Mr. Mullis had filled prescriptions for controlled substances.
 

 Detective Fowler received responses from ten pharmacies that provided profiles for Mr. Mullis. The pharmacy profiles revealed that Mr. Mullis had filled prescriptions for oxycodone, a controlled substance,
 
 [3]
 
 from six different doctors within thirty days “broken down over a time period.” And Detective Fowler determined from this information that Mr. Mullis had obtained 4102
 
 [4]
 
 oxycodone pills over a six-month period. As a result, Detective Fowler believed that Mr. Mullis was doctor shopping.
 

 Detective Fowler continued his investigation by contacting the offices of the six doctors identified on the pharmacy profiles and speaking with either the doctors or their employees. Detective Fowler did not obtain any written records, but he did obtain statements in response to his inquiries. In each instance, he asked the same questions:
 

 
 *750
 
 One, if they identified [Mr. Mullís] by [his] driver’s license so that I can verify that they are dealing with the same person that I’m dealing with. And two, I asked them if they had any knowledge or if [Mr. Mullís] told them that they were obtaining — or a controlled substance from another doctor within thirty days of obtaining it from them.
 

 Detective Fowler “also asked them [if] they [had] known or had [Mr. Mullís] told them would they still have continued to see — give [him] the medication.”
 

 Detective Fowler stated that employees in each of the doctors’ offices confirmed that Mr. Mullís was a patient and that Mr. Mullís had been identified by his driver’s license. Detective Fowler also learned from each office that Mr. Mullís “did not tell them that he was seeing another doctor and obtaining controlled medications” and that Mr. Mullís would not have received a prescription for a controlled substance if they had this information. Detective Fowler asserted that he did “not ask them exactly what it [was] that they [were] giving” Mr. Mullís. But he acknowledged on cross-examination that he “confirmed that that very doctor that you’re talking to or representative of that doctor has in fact given [Mr. Mullís] [0]xy[C]ontin,”
 
 [5]
 
 and that as “part of [his] investigation [he was] confirming which doctors have given [Mr. Mullís] [O]xy[C]ontin.” Detective Fowler acknowledged that he had obtained all of these statements without a subpoena and without providing Mr. Mullís with notice of his intent to obtain the information.
 

 II. THE CIRCUIT COURT’S RULING
 

 After the hearing on the motion to suppress, the circuit court entered a written order denying the motion. In its order, the circuit court divided its analysis between the pharmacy profiles and the statements from the doctors’ offices. Citing the First District’s decision in
 
 State v. Carter,
 
 23 So.3d 798 (Fla. 1st DCA 2009), the circuit court denied the motion to suppress the information in the pharmacy profiles, concluding that Detective Fowler had lawfully obtained this information under section 893.07(4).
 

 After it denied suppression of the pharmacy profiles, the circuit court turned to the statements that Detective Fowler obtained from Mr. Mullis’s doctors. In its order, the circuit court noted that it was “aware of section 456.057(7)(a)(3), Florida Statutes, which governs disclosui-e of patient records by records owners, which applies to physicians.” In ruling that Detective Fowler had not violated section 456.057(7)(a) or Mr. Mullis’s privacy rights, the circuit court stated as follows:
 

 The physicians are not state actors and could have declined to answer any law enforcement question regarding any person by citing section 456.057(7), Florida Statutes. The Detective lawfully obtained records from the pharmacies and followed up by calling each physician. The Detective made a limited oral inquiry of each physician as a logical followup to validate information received from the pharmacies. The Detective testified that he would have discontinued the investigation of a particular prescription if any of the physicians had responded “yes” to the question of whether they would have prescribed a drug to [Mr. Mullís] had they known he was obtaining drugs from other doctors.
 
 [The Detective] did not request any written records from the physicians or make inquiry
 
 
 *751
 

 into any other facet of the medical history, conditions or treatment of [Mr. Mul-lís].
 
 The Court concludes that on these facts [Mr.Mullis’s] constitutional rights were not violated by the State.
 

 (Emphasis added.) Thus the circuit court found that the verbal statements that Detective Fowler received in response to his questions directed to the doctors or their employees did not concern Mr. Mullis’s medical history, conditions, or treatment. It thus implicitly concluded that the statements did not constitute “reports and records relating to [Mr. Mullis’s] examination or treatment” under section 456.057(6) and that Detective Fowler’s failure to comply with section 456.057(7)(a)(3) did not warrant suppression of the statements.
 

 Mr. Mullís subsequently entered a guilty plea with the understanding that he was reserving his right to appeal the denial of his motion to suppress. The parties and the circuit court agreed that its ruling on Mr. Mullis’s motion to suppress was dis-positive, and the record supports that determination. Accordingly, the merits of the circuit court’s order are properly before us on appeal.
 
 See
 
 Fla. R. App. P. 9.140(b)(2)(A)(i).
 

 III. THE STANDARD OF REVIEW ON APPEAL
 

 As we noted in
 
 State v. K.S.,
 
 28 So.3d 985 (Fla. 2d DCA 2010), we employ a mixed standard of review in addressing a trial court’s order on a motion to suppress.
 

 The trial court’s “determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the circuit court’s determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review.”
 
 State v. Clark,
 
 986 So.2d 625, 628 (Fla. 2d DCA 2008) (citation omitted).
 

 Id.
 
 at 987.
 

 IV. DISCUSSION
 

 A. The Pharmacy Records
 

 After the circuit court entered its written order on Mr. Mullis’s motion to suppress, this court adopted the First District’s reasoning in
 
 Carter
 
 in
 
 State v. Tamulonis,
 
 39 So.3d 524 (Fla. 2d DCA 2010),
 
 review denied,
 
 52 So.3d 662 (Fla.2011). We concluded that section 893.07(4) authorizes “law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances” to obtain an individual’s pharmacy records related to controlled substances without a warrant, a subpoena, or prior notice to the patient without violating that individual’s constitutional privacy rights.
 
 Id.
 
 at 528 (quoting § 893.07(4)). Because Detective Fowler is a law enforcement officer, he was entitled to obtain Mr. Mullis’s pharmacy records under section 893.07(4),
 
 see id.,
 
 and we affirm without further discussion that part of the circuit court’s order denying suppression of the pharmacy profiles.
 

 B. The Information Obtained From the Doctors’ Offices
 

 Individuals enjoy a right of privacy in their medical records under article I, section 23, of the Florida Constitution.
 
 State v. Johnson,
 
 814 So.2d 390, 393 (Fla.2002);
 
 see also Barker v. Barker,
 
 909 So.2d 333, 337 (Fla. 2d DCA 2005) (citing
 
 Johnson
 
 in support of the foregoing proposition). Here, Mr. Mullís does not challenge the State’s ability to obtain his medical records under section 456.057 without violating his constitutional privacy rights,
 
 [6]
 
 
 *752
 
 but he argues that Detective Fowler violated his privacy rights by acquiring information from his doctors without first obtaining his authorization or a subpoena issued upon proper notice as required by section 456.057(7)(a)(3).
 
 [7]
 

 Section 456.057 provides in pertinent part as follows:
 

 (6) Any health care practitioner licensed by the department or a board within the department who makes a physical or mental examination of, or administers treatment or dispenses legend drugs to, any person shall, upon request of such person or the person’s legal representative, furnish, in a timely manner, without delays for legal review, copies of all
 
 reports and records relating to such examination or treatment,
 
 including X rays and insurance information. ...
 

 (7)(a) Except as otherwise provided in this section ...
 
 such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient’s legal representative
 
 or other health care practitioners and providers involved in the care or treatment of the patient,
 
 except upon written authorization of the patient.
 
 However, such records may be furnished without written authorization under the following circumstances:
 

 3. In any civil or criminal action, unless otherwise prohibited by law,
 
 upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient’s legal representative by the party seeking such records.
 

 (Emphasis added.) Thus, to determine whether Detective Fowler’s conduct violated section 456.057(7)(a) and Mr. Mullis’s constitutional privacy rights, we must first determine whether the statements that he obtained from Mr. Mullis’s doctors constituted “reports and records relating to [the] examination or treatment” of Mr. Mullís. § 456.057(6);
 
 see also State v. Herc,
 
 67 So.3d 266 (Fla. 2d DCA 2011) (directing the trial court to address on remand whether statements obtained from a defendant’s doctors’ offices were medical records as defined by section 456.057(6));
 
 State v. Shukitis,
 
 60 So.3d 406, 409 (Fla. 2d DCA 2010) (stating same).
 

 For purposes of our analysis, the information that Mr. Mullis’s doctors or their employees provided to Detective Fowler may be grouped into four categories: (1) statements confirming that Mr. Mullís was a patient, (2) statements that the doctors had prescribed controlled substances to
 
 *753
 
 Mr. Mullis, (3) statements that Mr. Mullis did not disclose his receipt of a prescription for a controlled substance from another provider within the preceding thirty days, and (4) statements that the doctors would not have prescribed a controlled substance to Mr. Mullis if they had known that he had received a prescription for a controlled substance within the preceding thirty days.
 

 First, we observe that the circuit court did not address in its order, and Mr. Mul-lis does not challenge on appeal, Detective Fowler’s obtaining statements from Mr. Mullis’s doctor’s offices confirming his identity as a patient. Thus we do not address whether such statements are entitled to protection under section 456.057(7)(a).
 
 [8]
 

 The next category of information that Mr. Mullis’s doctors or their employees provided to Detective Fowler was the issuance by each of the doctors of a prescription to Mr. Mullis for a controlled substance. We conclude that this information constitutes a report relating to Mr. Mullis’s examination or treatment. A doctor’s prescription of a medication is a form of treatment.
 

 Similarly, we conclude that the statements to Detective Fowler that Mr. Mullis had not told his doctors that he had received a prescription for a controlled substance from another provider within the last thirty days constitute reports relating to Mr. Mullis’s examination or treatment under section 456.057(6). Detective Fowler stated that each of Mr. Mullis’s doctors or their employees advised him that the doctor would not have prescribed a controlled substance to Mr. Mullis if the doctor had known that Mr. Mullis had been prescribed a controlled substance by another physician within the last thirty days. Thus the information that was purportedly withheld affected decisions about Mr. Mullis’s treatment. It follows that the statements about what Mr. Mullis told his doctors concerning his prior prescriptions constitute reports relating to his examination or treatment.
 

 Finally, the statements that Mr. Mullis’s doctors would not have prescribed a controlled substance to Mr. Mullis if Mr. Mullis had disclosed a prior prescription constitute reports relating to his examination or treatment because they also involve treatment decisions. Accordingly, except for the statements confirming Mr. Mullis’s status as a patient, we conclude that all of the statements that Detective Fowler obtained from Mr. Mullis’s doctors or their employees constituted reports related to Mr. Mullis’s examination and treatment. Thus Detective Fowler should not have obtained those statements without Mr. Mullis’s written authorization or the requisite notice and subpoena under section 456.057(7)(a)(3). We turn now to the ef-
 
 *754
 
 feet of our conclusions on Mr. Mullis’s motion to suppress.
 

 C. The Effect of Our Holding on Mr. Mullis’s Motion to Suppress
 

 In
 
 State v. Sun,
 
 82 So.3d 866, 2011 WL 2135646 (Fla. 4th DCA 2011), the Fourth District recently addressed the suppression of statements obtained from the defendant’s doctors in violation of section 456.057. The Fourth District noted that “[w]hen law enforcement does not comply with the procedural requirements of statutes like the ones here, the items obtained should be suppressed when law enforcement made no good faith effort to comply.”
 
 Id.
 
 at 873;
 
 see also Johnson,
 
 814 So.2d at 394 (holding that the exclusionary rule may apply when the State improperly obtains a defendant’s hospital records in violation of section 395.3025, Florida Statutes (1997)). The Fourth District then stated that it agreed with the trial court’s implicit finding in the case before it that the detective in that case displayed a lack of good faith in failing to comply with section 456.057(8) and that the statements should be suppressed. 82 So.3d at 873-74.
 

 Here, the circuit court concluded that Detective Fowler did not violate section 456.057(7)(a) when he obtained the statements from Mr. Mullis’s doctors. Thus it did not reach the issue of whether Detective Fowler displayed a lack of good faith in failing to comply with the statute. However, when asked at the hearing on the motion to suppress whether he made any attempt to provide Mr. Mullís with notice or to obtain a court-issued subpoena prior to contacting Mr. Mullis’s doctors, Detective Fowler stated, “Absolutely not.” Because Detective Fowler made absolutely no attempt to comply with section 456.057(7)(a)(3) before obtaining the statements from Mr. Mullis’s doctors or their employees, we conclude that his conduct was not in good faith.
 
 Cf. Johnson,
 
 814 So.2d 390 (observing that because the State had repeatedly attempted to comply with the statutory notice requirements before subpoenaing the defendant’s hospital records, its conduct was in good faith). Accordingly, we conclude that the statements from Mr. Mullis’s doctors or their employees- — -with the exception of the statements confirming Mr. Mullis’s status as a patient — should be suppressed.
 
 See Sun,
 
 82 So.3d at 873-74.
 

 Y. CONCLUSION
 

 We affirm the order on Mr. Mullis’s motion to suppress to the extent that it denies suppression of the pharmacy records. We reverse the order to the extent that it denies suppression of the statements that Detective Fowler obtained from Mr. Mullis’s doctors or their employees, except as noted above, and remand for the circuit court to enter an order suppressing those statements. We note that because our decision reverses in part the circuit court’s ruling on Mr. Mullis’s motion to suppress, Mr. Mullis may be entitled to withdraw his plea on remand.
 
 See England v. State,
 
 46 So.3d 127, 130 (Fla. 2d DCA 2010) (holding that where “[i]t [was] unknown whether [the defendant] would have pleaded guilty if his motion to suppress the statements had been granted,” he should be given the option of withdrawing his plea on remand).
 
 [9]
 

 
 *755
 
 Affirmed in part, reversed in part, and remanded.
 

 SILBERMAN, C.J., and CASANUEVA, J., Concur.
 

 [1]
 

 . In his motion, Mr. Mullis also sought to suppress statements that he made following his arrest. The circuit court’s order does not address Mr. Mullis's postarrest statements, and Mr. Mullis makes no argument about those statements on appeal. Thus we do not address Mr. Mullis’s postarrest statements in this opinion.
 

 [2]
 

 . "Doctor shopping refers to the practice of a patient requesting care from multiple physicians, often simultaneously, without making efforts to coordinate care or informing the physicians of the multiple caregivers. This usually stems from a patient’s addiction to, or reliance on, certain prescription drugs or other medical treatment.” Doctor Shopping (Aug. 2, 2011, 2:05 p.m.), http://en.wikipedia. org/w/index.php?title=Doctor-shopping & ol-did=442676844. Violations of section 893.13(7)(a)(8) are commonly referred to as "doctor shopping.'?D
 
 See generally Knipp v. State,
 
 35 Fla. L. Weekly D2898, D2899 (Fla. 4th DCA Dec.22, 2010) (referring to section 893.13(7)(a)(8) as the "doctor shopping” statute).
 

 [3]
 

 . § 893.03(2)(a)(l)(o).
 

 [4]
 

 . The circuit court’s order states that Detective Fowler determined that Mr. Mullis received 4102 pills, but our review of the transcript of the suppression hearing reflects that Detective Fowler testified that Mr. Mullis received 4150 pills. The pharmacy profiles were entered into evidence at the hearing, so the circuit court may have recalculated the number based upon its review of the pharmacy profiles.
 

 [5]
 

 . "OxyContin is the brand name of a time-release formula of oxycodone produced by the pharmaceutical company Purdue Pharma.” Oxycodone (Aug. 22, 2011, 8:14 p.m.), http:// en.wikipedia.org/w/index.php?title= Oxycodone & oldid=446205154.
 

 [6]
 

 .
 
 See State v. Sun,
 
 82 So.3d 866, 870 (Fla. 4th DCA 2011) (noting that “section 456.057 rep
 
 *752
 
 resents a ‘legislative attempt to balance a patient’s privacy rights against legitimate access to’ the patient’s medical information” and that ”[t]he statute establishes procedural safeguards which, if followed, allow the state to obtain protected information without contravening the privacy protection of [a]rticle I, [sjection 23” (quoting
 
 Johnson,
 
 814 So.2d at 393)).
 

 [7]
 

 . We note that in
 
 Sun,
 
 82 So.3d at 871-72, the Fourth District analyzed the investigating officer’s conduct in obtaining statements similar to those in this case from the defendant's doctors under the physician-patient privilege established in section 456.057(8). Section 456.057(8) makes confidential and restricts disclosure of "information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient.” Neither of the parties nor the circuit court addressed the application of the physician-patient privilege or section 456.057(8) to the statements in this case. Although we recognize that section 456.057(8) may provide a separate ground for suppression of the statements that Detective Fowler obtained from Mr. Mullis's doctors or their employees, that issue is beyond the scope of this opinion.
 

 [8]
 

 . The statements confirming Mr. Mullis’s identity as a patient arguably do not constitute "reports ... relating to [Mr. Mullis’s] examination or treatment” because his status as a patient and the confirmation of his identity through his driver’s license, while suggesting that Mr. Mullis was examined or treated, do not disclose information about his examination or treatment. However, Mr. Mullis’s identity as a patient is arguably confidential under section 456.057(8), which protects "information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient,” because his physicians presumably learned and confirmed his identity in the course of providing him care and treatment.
 
 See Sun,
 
 82 So.3d at 872 (noting that section 456.057(8) creates a broad doctor-patient privilege and that its language does not limit the privilege to "information necessary for treatment”). As noted above, this issue is not properly before us for resolution in this appeal.
 

 [9]
 

 . We note that testimony by Detective Fowler at trial concerning the information he collected from the pharmacies and the doctors during his investigation of Mr. Mullís would constitute hearsay. § 90.801, Fla. Stat. (2010). Such testimony would be inadmissible at trial over a timely defense objection. § 90.802. We express no opinion on how the State-in a trial-might prove its doctor-shopping case against Mr. Mullís.