NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Appellant,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　Case No. 2D12-2882
　　　　　　　　　　　　　　　　　　)
WILLIAM CRUMBLEY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Appellee.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

Opinion filed July 25, 2014.

Appeal from the Circuit Court for Pasco
County; Linda H. Babb, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Dawn A. Tiffin, Assistant
Attorney General, Tampa, for Appellant.

Terry P. Roberts, Tallahassee, for Appellee.


ALTENBERND, Judge.

　　　　　　The State appeals an unusual pair of nonfinal orders sealing certain

medical records that had been obtained by the State pursuant to a search warrant.  The

orders effectively deny the State all access to this potential evidence and will prevent its

use as evidence in three pending criminal cases.  We conclude that this court has

jurisdiction to review the orders as orders suppressing evidence obtained by search and

seizure.  See Fla. R. App. P. 9.140(c)(1)(B).

As explained in this opinion, the medical records were seized prior to the filing of any criminal proceeding. They were seized pursuant to a search warrant during an investigation of persons allegedly operating an illegal pain management clinic. Contrary to the ruling of the circuit court, we conclude that the magistrate could properly issue a search warrant for medical records at the clinic without an affidavit establishing probable cause for each patient. If the records could be used to prove criminal charges against the persons being investigated, the magistrate could authorize their seizure. Accordingly, the circuit court erred in sealing these records for that reason.

The records, however, are the medical records for patients who are not targets of the investigation and for whom law enforcement had no probable cause to obtain a search warrant at the time of seizure. The patients have both statutory and constitutional rights of privacy. Thus, the circuit court was correct to be concerned about those rights. Although we reverse the orders on appeal, we remand for further proceedings at which the circuit court may fashion an appropriate remedy, permitting the State limited access to the information inside the medical records but with a method that is essentially the least intrusive means of interference with the patients' rights of privacy.

## I. FACTS

In mid-2011, the Pasco County Sheriff's Office conducted an investigation of Harbour Medical Group. The investigating deputies suspected that the location was an unlicensed pain-management clinic. See § 458.3265, Fla. Stat. (2010, 2011). As reflected in the affidavit used to obtain a search warrant, the detectives observed the clinic from its parking lot, sent undercover deputies into the clinic, and obtained

- 2 -

information from nearby pharmacies. Allegedly, the deputies discovered that Dr. Crumbley had written about 17,500 prescriptions for 1400 patients between November 1, 2009, and November 9, 2011. Of those prescriptions about 14,000 were for "pain management clinic type medications." The investigation ultimately focused on Dr. Crumbley and on two persons involved at the clinic who were not licensed physicians, Ronald York and Tosha Jo Robbins.

On December 8, 2011, one of the investigating deputies filed an affidavit for a search warrant, which was subsequently issued by Judge Pat Siracusa. The warrant permitted the sheriff to seize a broad array of business records located at the clinic, including "patient medical records." The warrant was executed on December 13, 2011, and the inventory reflects that the deputies seized extensive materials, including at least twenty boxes of "patient files." The defendant was arrested the same day they conducted the search.

The State filed a two-count information against Dr. Crumbley on December 23, 2011. Count II alleged that he had introduced contraband into a detention facility. That count is not the focus of this appeal. Count I alleged that Dr. Crumbley

> did knowingly operate, own or manage a non-registered pain management clinic that is required to be registered with the Department of Health pursuant to Florida Statute 459.0137(1); contrary to Chapter 459.013(1)(e), Florida Statutes, and against the peace and dignity of the State of Florida.

This charge was amended but only to change the relevant statute to section 458.3265(1). Mr. York and Ms. Robbins were also arrested and similarly charged.

It is noteworthy that section 458.3265 was amended between the first and last dates alleged in the information.[1]  From a review of the statute, it appears that the patient medical records seized in this case may have less relevance and that less information from those files may be needed for the State to prove its case under the statute as it existed prior to July 1, 2011.  See ch. 2011-141, § 31, at 2247, Laws of Fla.  However, following the amendment, the definition of a "[p]ain-management clinic" may include a facility "[w]here in any month a majority of patients are prescribed opioids, benzodiazepines, barbiturates, or carisoprodol for the treatment of chronic nonmalignant pain."  § 458.3265(1)(a)(1)(b)(II), Fla. Stat. (2011).  To prove this element of the criminal offense might require the State to have more extensive access to medical records.

The record reflects that Dr. Crumbley was released on bond and that an attorney appeared on his behalf.  At least through the time when the orders on appeal were entered, Dr. Crumbley did not file any motion to suppress or other motion directed to the items seized pursuant to the search warrant.  Mr. York, who is pro se, filed a motion to suppress, but that motion does not appear to have played any role in the entry of the orders on appeal.

It is apparent from our record that both the deputies and the assistant state attorneys involved in this case realized that the medical records required special

_____

[1]The amended information alleges that the crimes were committed between October 14, 2010, and December 13, 2011.  Section 458.3265 went into effect two weeks earlier on October 1, 2010.  See ch. 2010-211, §§ 4, 14, at 2632-38, 2649, Laws of Fla.  The statute was amended on July 1, 2011, in between the offense range alleged in the information.  See ch. 2011-141, §§ 4, 31, at 2198-2207, 2247, Laws of Fla.

treatment.  Exactly how decisions were made and by whom is not clear from this record, but the procedures described below indicate that the State was aware of the decision in State v. Rattray, 903 So. 2d 1015 (Fla. 4th DCA 2005), and attempted to follow those procedures.

In mid-April 2012, the State filed a document entitled "State's Memorandum of Law, Regarding Medical Records Seized in Search Warrant, and Motion to Preserve Recording."  In the first sentence of this document, the State moved to "review medical records seized pursuant to a search warrant."  The document recites that the patient medical files "have been in the care, custody, and control of the Pasco County Sheriff's Office and have not been reviewed pending a privacy hearing which was set for April 30, 2012."[2]  The document further explains that the deputies had prepared 856 letters to patients notifying them of this seizure, warning them that they might be possible targets of the investigation, and notifying them of the hearing set for April 30, 2012.  A copy of a sample letter is attached to this opinion as Appendix A.  The document contained a thorough discussion of the applicable law.

Within a few days of the filing of this document, an objection to the review of medical records was filed by an attorney representing an unidentified patient.  Apparently, a few more responses to the letters were received, but those responses have been sealed and are not in our record.

The privacy hearing took place before Judge Susan Gardner on April 30, 2012.  From the record, it is not clear that Dr. Crumbley or his attorney appeared at this

---

[2]It is likely that the need for a privacy hearing was discussed with Judge Susan Gardner at a hearing for which we have no transcript.  The record simply does not explain what prompted the filing of the document or how the hearing was set.

hearing. If so, they were not active participants. At least two attorneys appeared for patients whose names were not fully disclosed. Mr. York appeared for the hearing, but the court concluded that he had no standing.

The only witness who testified at the hearing was the deputy who signed the affidavit for the search warrant. His testimony was frequently interrupted by objections and legal discussions among the lawyers and the judge. He provided testimony about obtaining the warrant and executing the warrant. He explained that sheriff's personnel had reviewed these records for the limited purposes of obtaining the names and addresses of the patients. They looked at 904 patient files relating to 855 patients. They sent letters to all 855 patients; 208 of those letters were returned as undeliverable. Of that group, 8 patients were determined to be deceased. Thereafter, the sheriff's personnel attempted alternative addresses for the returned letters. Ultimately, the deputy testified that 739 letters were delivered and 116 were undeliverable.

The deputy also explained the type of information that the investigators needed to extract from these files to prove the case and a method of giving each patient an identifying number to preserve privacy. He testified that a few patients had made contact with him to obtain copies of their records.

Two portions of this testimony probably create the most controversy. First, the deputy admitted that, while the patients were not the target of this investigation, if the reviews revealed probable criminal conduct by the patient, then the patient would be further investigated. Second, he admitted that the Department of Health had served a subpoena on the sheriff to produce records for use in an

administrative investigation and that the sheriff had complied with the subpoena. It is not clear from this record what was given to the Department of Health.

Near the end of the hearing, Judge Gardner explained:

I'm the wrong one sitting here. . . . [T]here's a very intricate part of this puzzle that has already been determined and I'm having to jump on somebody else's back and look at this.
This case needs to be assigned to Judge Siracusa. He's the one that has the probable cause. Everything is hinging on that warrant right now and that's—he had the benefit of hearing the affidavits and having sworn testimony in his chambers, and I'm just playing catch up here.
And I'm not the one who made that decision, so I don't feel that I'm the appropriate one to hear this argument.

Accordingly, Judge Gardner filed a notice of recusal on May 1, 2012. The case, however, was not assigned to Judge Siracusa but rather to Judge Linda Babb. On May 15, without any further proceedings, Judge Babb, "upon the court's own motion," entered an eight-page order requiring the Pasco County Sheriff's Office to immediately seal all seized patient medical records until further order of the court. The Office of the State Attorney was ordered to notify all affected patients of this action. That office was also required to deliver to the court the original letters and objections received from all affected patients without retaining a copy. The letters and objections were to be placed in a sealed file by the clerk of court.

A week later, Judge Babb entered a second order requiring the court reporter to preserve the record of the hearing before Judge Gardner and to file a sealed copy of the hearing with the clerk of court.[3] The State's request to have access to the

---

[3]The copy of the transcript in our record is not sealed. From its content we see no reason to seal the transcript of this court proceeding.

records was denied as moot, and a related hearing was cancelled as moot. The State has timely appealed these two orders.

## II. THE TRIAL COURT'S ORDER

The trial court's order provides a detailed explanation of its ruling. Although we disagree with some of its reasoning, the detailed explanation has been very helpful in this court's analysis. The order provides a good summary of the procedural history of the case and of the testimony at the hearing. In the section discussing its analysis, the court first examines the search warrant and the affidavit supporting its issuance. The court concludes: "The affidavit set forth facts establishing probable cause regarding the actions of the doctors at Harbour Medical Group, but it lacked sufficient information about individual patients." It further explains: "While the search warrant did authorize the seizure of patient medical records and prescription records, because the affidavit alleged no facts regarding individual patients, there was no probable cause for a warrant for individual patients' records for the purpose of prosecuting patients."

The court then turns to section 456.057, Florida Statutes (2010, 2011), which protects the privacy of patient records maintained by health care providers. Relying heavily on this court's decision in Mullis v. State, 79 So. 3d 747 (Fla. 2d DCA 2011), the court concludes that such medical records can only be obtained by issuance of a subpoena in compliance with section 456.057(7). The court recognizes that the Fourth District did not apply section 456.057(7) in the context of a search warrant in Limbaugh v. State, 887 So. 2d 387 (Fla. 4th DCA 2004), and that it allowed procedures

- 8 -

similar to the procedures employed by the deputies in <u>Rattray</u>, 903 So. 2d 1015, but it concludes that it must follow the Second District's decision in <u>Mullis</u>, 79 So. 3d 747.

Finally, it recognizes that article I, section 23, of the Florida Constitution provides a right of privacy applicable to medical records and questions whether the actions of the deputies may have already violated those rights. Although the order seals the records "until further of this court," it contains no explanation as to how the State might ever get access to these records having already violated section 456.057(7), and having no probable cause as to individual patients. Although no one moved to suppress this evidence challenging the sufficiency of the affidavit supporting the search warrant, the court's own motion determines that the affidavit was insufficient due to the lack of evidence as to each patient.

### III. JURISDICTION

Dr. Crumbley argues that this appeal cannot proceed because the order is a nonfinal, nonappealable order, and because the State has failed to name the patients as necessary parties to this appeal. We reject both arguments.

As to the argument that the patients are necessary parties to this appeal, the action in the trial court was a criminal prosecution against Dr. Crumbley. Legally, none of the patients are "parties" to that proceeding. They filed no motion seeking relief other than the anonymous objection to the review of medical records. The motion challenged by this appeal is the court's own motion. As a practical matter, the trial court's order sealing the records and the correspondence would seemingly prevent the State from serving these patients and naming them in the style of this appeal. We note

that the State served its notice of appeal on all attorneys who appeared for unnamed patients. Those attorneys have not appeared for the patients in this appeal.

This appeal involves an order that prevents the State from developing its evidence in the criminal case against Dr. Crumbley. The patients create factual complexities in resolving these legal issues, but they are not parties to the action and they are not bound by any ruling. If they wish to bring a civil action alleging a violation of their privacy rights, nothing in this criminal action would bar that civil action. Indeed, the complexity of this case arises mostly from the need to implement procedures to protect the privacy rights of people who are not and never will be parties to the action. Thus, we conclude there is no basis to dismiss this appeal for lack of any necessary party.

Whether the order on appeal is reviewable under rule 9.140(c)(1)(B) may be a closer question. No party filed a motion to suppress. The court's own motion is not expressly a motion to suppress, but the ruling concludes that the affidavit in support of the warrant is legally insufficient. The order not only suppresses the evidence, it seals the information so that the State can never know what evidence is contained within the sealed documents. Dr. Crumbley suggests that the order does not prevent the State from using other methods to obtain the sealed files, but he does not provide any procedure that would actually work to obtain these records unless the State were to develop probable cause to bring separate criminal proceedings against at least a

majority of the patients. Accordingly, we conclude that the order is functionally an order suppressing evidence seized by search and seizure.[4]

### IV. THE WARRANT DID NOT REQUIRE PROBABLE CAUSE AS TO EACH PATIENT

We conclude that the trial court erred when it required the deputy to have probable cause of criminal activity by a patient in order to obtain a search warrant for the patient's medical records when those records were needed to investigate criminal activity by persons other than the patient. There are many situations in which medical records of victims are needed during criminal investigations. The fact that the records are not those of the criminal, but rather of some presumably innocent person, does not prevent the records from being relevant to the criminal prosecution. We can find no authority to support this additional probable cause requirement when seeking a search warrant.

The trial court's error is perhaps revealed in the statement: "While the search warrant did authorize the seizure of patient medical records and prescription records, because the affidavit alleged no facts regarding individual patients, there was no probable cause for a warrant for individual patients' records for the purpose of prosecuting patients." These medical records were not obtained "for the purpose of prosecuting patients." They were obtained for the purpose of prosecuting Dr. Crumbley.

The trial court openly reflects its concern about the deputy's suggestion that a review of the records could lead to further investigation of patients. That concern is valid. The search in this case was done to prove a third-degree felony against three

_____

[4]Even if we concluded that the order on appeal was not appealable, these errors would permit review by certiorari. See, e.g., Limbaugh, 887 So. 2d 387.

people. There is a high probability that some of the medical records obtained in the search could help establish criminal cases involving far more serious crimes by at least a few of these patients. If law enforcement were using a prosecution of a minor offense in order to obtain otherwise unavailable, confidential information to prosecute other defendants, that would raise significant issues.

But that specter is not a legal justification to prevent the State from having any access to the medical records in the investigatory materials that it seized under what remains a lawful warrant. Clearly, a defendant in a subsequent criminal action could file a motion to suppress on this theory.[5] On remand, these considerations may warrant limits on the nature and extent of the State's access to these records, but they are not a basis to seal the records on a theory that the deputy needed probable cause as to each patient when the records were seized in this context.

## V. **LIMBAUGH** AND **MULLIS**

We reject the trial court's conclusion that this court's decision in Mullis, 79 So. 3d 747, prevented the trial court from following the law established in Limbaugh, 887 So. 2d 387, and Rattray, 903 So. 2d 1015. In Mullis, this court considered a case in which a law enforcement officer simply contacted doctors' offices during its investigation to determine whether a suspect was obtaining controlled prescription drugs from multiple doctors. 79 So. 3d at 749-50. The law enforcement officer never even attempted to obtain a search warrant. The officer's contact pressured the staff at the

---

[5]We emphasize that we express no opinion on the legal or factual merit of such a theory.

doctors' offices, perhaps unintentionally, to violate their nondisclosure requirements under section 456.056(7), which provides in pertinent part:

> (6) Any health care practitioner licensed by the department or a board within the department who makes a physical or mental examination of, or administers treatment or dispenses legend drugs to, any person shall, upon request of such person or the person's legal representative, furnish, in a timely manner, without delays for legal review, copies of all reports and records relating to such examination or treatment, including X rays and insurance information. . . .
> (7)(a) Except as otherwise provided in this section . . . such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization under the following circumstances:
> . . . .
> 3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.

Section 456.056(7) does not prevent an ordinary citizen from exercising his or her First Amendment right to call a doctor's office seeking information about a patient. Instead, it bars the doctor's office from giving out that information. Mullis, 79 So. 3d at 752-53, essentially concludes that law enforcement officers are not free to use their indicia of authority to pressure or cajole the staff at medical offices to violate this statute. As we later explained in Ruilova v. State, 125 So. 3d 991, 993 (Fla. 2d DCA 2013), the violation described in Mullis, 79 So. 3d 747, concerned investigatory material that probably never would have been admissible at trial. Whether the violation would actually lead to suppression of admissible evidence at a trial is still an open question in

- 13 -

this district.  The Fourth District has suppressed physical evidence obtained in violation of section 456.056(7) in a doctor shopping case.  See State v. Sun, 82 So. 3d 866, 874 (Fla. 4th DCA 2011).  However, the evidence was not obtained by a search warrant.  Id. at 868.

In Limbaugh, 887 So. 2d 387, the Fourth District considered another case of doctor shopping.  In that case, after obtaining information from pharmacies, the police obtained a warrant to seize the suspect's medical records.  Id. at 389-90.  The Fourth District expressly held that the "State's authority to seize such records by a validly issued search warrant is not affected by any right of privacy in such records."  Id. at 389.  Thus, it is clear that the outcome in Sun, 82 So. 3d 866, would have been different if law enforcement had used a search warrant in that case.

In Limbaugh, 887 So. 2d at 389-90, the records sought were those of the suspect.  The trial court in this case questioned whether that holding would apply in a case where the records were those of third parties.  Id. at 396.  The Fourth District itself extended the holding in Limbaugh to a case that is similar to this case in Rattray, 903 So. 2d 1015.  We agree with the reasoning and the outcome in Rattray, 903 So. 2d at 1018-19 (holding that third party patients' privacy rights need to be balanced against the State's need to conduct criminal investigations).

It should be noted that the exception in section 456.057(7)(a)(3) concerns the use of a subpoena "[i]n any civil or criminal action."  This case, as well as Limbaugh and Rattray, represent situations in which no civil or criminal case was pending when the search warrant was issued.  The case was commenced later by the filing of the information.  Indeed, in the normal course, a search warrant is used prior to the

commencement of a criminal proceeding so that people are not prosecuted unless the State already possesses the evidence needed to support the charge. Section 456.057(7) simply does not permit a health care provider to refuse to obey a validly issued search warrant that lawfully compels production of medical records.

## VI. ACCOMMODATING THE PRIVACY RIGHTS OF PATIENTS

Having concluded that, at least on the face of the current proceedings, the State lawfully seized the medical records, the question remains whether the deputies and the assistant state attorneys are authorized to have unfettered access to these records. We conclude that the record does not permit a full answer to that question. On remand, the court should conduct an additional hearing to consider the reasonable scope of protection that should be granted to these records.

The search warrant in Rattray, 903 So. 2d at 1019, expressly required that the seized medical records "be sealed pending notice to the patients and further order of the court." The warrant in this case does not contain such a provision, although it contains the more common provision that the seized property be held by law enforcement "within the constructive custody of the court until further order of a court of competent jurisdiction." It appears that the deputies in this case may have been attempting to duplicate the sealing method used in Rattray without an express provision in the warrant.

Once the original medical records are seized under a search warrant, they are no longer in the possession of a health care practitioner. Section 456.057 would not seem to apply directly to records in the possession of law enforcement. However, we agree with the trial court that the constitutional right of privacy in article I, section 23, of

- 15 -

the Florida Constitution plays a role when the government seizes medical records as evidence.

The constitutional right of privacy is regarded as a fundamental right. See art. I, § 23, Fla. Const. Under the "compelling state interest standard," if an individual possesses a legitimate expectation of privacy in the information at issue, the burden of proof is on the State to justify an intrusion on that individual's privacy. Such a burden can be met by demonstrating that the intrusion serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation, 477 So. 2d 544, 547 (Fla. 1985); State v. Tamulonis, 39 So. 3d 524, 527-28 (Fla. 2d DCA 2010). In weighing the right of the State to prosecute Dr. Crumbley against the privacy rights of the patients, the trial court with its constructive possession of these records has power to reach a reasonable balance.

That balance is impossible to describe on the basis of this court's record. The court would need to know with some precision what information the State needed for its prosecution. It would also need to know what information is actually contained in a typical patient record. It is unlikely that the State needs access to much of the personal information that may exist in these files. The court may conclude that it would be appropriate to appoint someone with a level of medical training as a special officer of the court to assist in the review of these records. Attempting to emulate the notice requirements in section 456.057 may be an appropriate step. From the record, the seized medical records should include records for undercover deputies who are unlikely to have any objection to the use as initial exemplars. It may be that review of records

should be limited at least initially to experts for each side.  It may be appropriate to appoint a public defender to serve as an advocate for the majority of patients who will be hesitant to appear in court after having been warned of possible prosecution.

In future cases involving similar medical records, the procedure followed in Rattray, 903, So. 2d at 1016, whereby the records were immediately sealed after their seizure, would seem to be a very good idea.  This case demonstrates that the magistrate issuing the warrant might be well advised to restrict the sealed records so that the records are not opened to obtain patient names and addresses until a hearing is conducted before a court of competent jurisdiction.  Likewise, the law enforcement agency might be ordered to contest any subpoena for the records that it received from another agency so that the sealed records are never released without a court order.

The trial court may be correct in its concern that the deputies might have violated the privacy rights of third parties.  That concern, however, is an issue that can be addressed in a civil court and does not need to be addressed in this criminal case at this stage in the proceedings.

Reversed and remanded.


NORTHCUTT and CASANUEVA, JJ., Concur.



# OFFICE OF THE STATE ATTORNEY
## SIXTH JUDICIAL CIRCUIT OF FLORIDA
## PASCO AND PINELLAS COUNTIES

**BERNIE McCABE**
**State Attorney**

**April 02, 2012**

**Dear**

I am an Assistant State Attorney for the Sixth Judicial Circuit of Florida. Pursuant to an investigation by the Pasco Sheriff's Office certain documents were seized from the premises of Harbour Medical Group located at 1930 Land 0' Lakes Blvd. Suite #6, Lutz, Pasco County, Florida pursuant to a lawfully obtained and executed search warrant. Among these documents were some of your medical records and prescription records.

The medical records in your file have not been reviewed, but it has been determined that probable cause exists to believe that these documents might include evidence of criminal Evidence of such criminal .activity may be contained in your file and you could be a potential witness or possible target of the criminal investigation. While the investigation into Harbour Medical Group is ongoing, your cooperation could inure to your benefit and would certainly be appreciated.

Federal, State and/or Local Law enforcement and a licensed medical professional(s) will examine your records for evidence of criminal activity. Pursuant to law, you may be able to assert a right of privacy in these medical records. If you wish to object to the examining of these records, please notify the court in writing at the following address no later than April 23, 2012.

**The Honorable Judge Susan L. Gardner**
**Sixth Judicial Circuit Court**
**38053 Live Oak Ave.**
**Pasco County Courthouse, Court Room # 106A**
**Dade City, Fl. 33523**

Judge Susan L. Gardner will be available to hear and rule on objections to the records' review at a hearing that she has set for April 30, 2012 at 4:00 pm. If you wish to object to the records' review in person or through an attorney, please appear at that time at the Pasco County Courthouse located at 38053 Live Oak Ave. Dade City, Fl. 33523, Court Room A, at 4:00 p.m. If you cannot appear, in person or through an attorney, you may state your position by writing to Judge Susan L. Gardner at the above address.

If you must have a copy of your medical file, it may be obtained by contacting the Pasco Sheriff's Office at (800) 741-3673, Monday through Thursday, during the hours of 10:00am and 4:00pm. Any person seeking a copy of their medical file must identify him/herself to law enforcement using a driver's license or other valid photographic identification.

Any questions you may have concerning this matter should be directed to Detective              case detective, at (800)

**Sincerely,**


**Assistant State Attorney**