# Third District Court of Appeal

## State of Florida

Opinion filed May 13, 2015.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-1668
Lower Tribunal No. 11-1016-A-K

————————————

**The State of Florida,**
Appellant,

vs.

**Samuel Strickling,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Mark Jones, Judge.

Pamela Jo Bondi, Attorney General, and Michael W. Mervine, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Howard K. Blumberg, Assistant Public Defender, and Yosue Ochoa and Levi Lawrence Wilkes, Certified Legal Interns, for appellee.

Before WELLS, ROTHENBERG and EMAS, JJ.

WELLS, Judge.

The State of Florida appeals from an order granting Samuel Strickling's motion to suppress the testimony of two of his treating physicians as well as those physicians' medical records in this "doctor shopping" case. See § 893.13(7)(a)8, Fla. Stat. (2011).[1] We reverse that part of the order precluding all testimony from one of the physicians, Dr. Shapiro, but affirm as to that part of the order precluding the testimony of the second physician, Dr. McKnight, and excluding the medical records of both physicians.

The facts are as follows.

On November 22, 2011, Key West Police Officers Malgrat and Medina responded to a telephone call from a physician at the Truman Medical Center in reference to a report of "doctor shopping." Upon arrival, the officers were met by

[1] This provision makes it unlawful to attempt to secure either a controlled substance or a prescription for such a substance from a practitioner without informing that practitioner that the requester has received a controlled substance or prescription for same from another practitioner within the last thirty days:

(7)(a)  A person may not:

. . . .

8.  Withhold information from a practitioner from whom the person seeks to obtain a controlled substance or a prescription for a controlled substance that the person making the request has received a controlled substance or a prescription for a controlled substance of like therapeutic use from another practitioner within the previous 30 days.

§ 893.13(7)(a)8, Fla. Stat.  (2011).

Dr. Shapiro who told them that Samuel Strickling, who then was in the waiting room, had secured a prescription for a controlled substance the day before from Dr. McKnight, another doctor at the medical center, and was now seeking another prescription from Dr. Shapiro. Dr. Shapiro then provided the officers with a copy of the physicians' records relating to Strickling.

After speaking with Dr. Shapiro, the officers also spoke with Dr. McKnight, the physician who had written a prescription for Strickling the day before. During that conversation, Dr. McKnight advised the officers that had he known that Strickling had secured prescriptions from other physicians, he would not have written a prescription for him. Dr. McKnight then completed a sworn statement. Strickling was arrested and subsequently charged with violating section 893.13(7)(a)8 of the Florida Statutes.

Approximately four months after being charged, and after making a number of unsuccessful attempts to notify Strickling of its intent to request a subpoena to secure his medical records, the State finally notified Strickling of its intention to secure a subpoena for his medical records. See § 456.057(7)(a)3, Fla. Stat. (2011) (authorizing the release of medical records "upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records"). A subpoena was issued. Strickling thereafter moved to "suppress" not only the medical records initially

3

provided to the police, but also the records later obtained pursuant to subpoena. At the hearing which followed, he also sought to preclude both physicians from testifying.

In his motion, Strickling argued that the doctors had no authority to provide his medical information to the police and that the State had failed to act in good faith in securing that information. The trial court, concluding that this matter was controlled by the decisions in Mullis v. State, 79 So. 3d 747 (Fla. 2d DCA 2011), and State v. Sun, 82 so. 3d 866 (Fla. 4th DCA 2011), agreed and suppressed all statements and the medical records secured by the State and precluded the State from calling either physician as a witness. With the exception of the State's ability to call Dr. Shapiro as a witness, we affirm the order entered below.

*The Confidential Status of a Patient's Medical Records*

In 1988, the legislature amended the predecessor to section 456.057 of the Florida Statutes to create a broad and express physician-patient privilege of confidentiality in the medical records and medical condition of patients. Hasan v. Garvar, 108 So. 3d 570, 575 (Fla. 2012); Acosta v. Richter, 671 So. 2d 149, 154 (Fla. 1996); see § 456.057(7)(a), Fla. Stat. (2011) (in part providing "[e]xcept as otherwise provided in this section and in s. 440.13(4)(c), such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health

4

care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient."). The statute creating this privilege, while not applicable in some medical negligence and administrative proceedings,[2] also details a scheme for the disclosure without patient consent of a patient's protected personal medical information in a few limited circumstances. [3]

Hasan, 108 So. 3d at 567; see § 456.057 (7)(a)1-5.

---

[2] Section 456.057(8) of the Florida Statutes excepts from section 456.057(7) "medical negligence action[s] or administrative proceeding[s] when a health care practitioner or provider is or reasonably expects to be named as a defendant." § 456.057(8), Fla. Stat. (2011).

[3] Section 456.057(7)(a), provides:

> However, such records may be furnished without written authorization under the following circumstances:
>
> 1. To any person, firm, or corporation that has procured or furnished such examination or treatment with the patient's consent.
>
> 2. When compulsory physical examination is made pursuant to Rule 1.360, Florida Rules of Civil Procedure, in which case copies of the medical records shall be furnished to both the defendant and the plaintiff.
>
> 3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.
>
> 4. For statistical and scientific research, provided the information is abstracted in such a way as to protect the identity of the patient or provided written permission is received from the patient or the patient's legal representative.

In <u>Sun</u>, the court addressed whether a police officer violated Sun's constitutional right to privacy and section 456.057 when he secured written statements and patient contracts from Sun's doctors without first securing Sun's authorization, a search warrant, or a subpoena as authorized by section 456.057(7)(a)3. <u>Sun</u>, 82 So. 3d at 870-871 (stating that "[t]he state constitutional right to privacy protects medical records") (citing <u>State v. Johnson</u>, 814 So. 2d 390, 393 (Fla. 2002) ("A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution, and any attempt on the part of the government to obtain such records must first meet constitutional muster.")). In <u>Mullis</u>, the court addressed whether a police officer violated Mullis' constitutional right to of privacy when, following a tip from a fellow officer, he acquired information over the phone from Mullis' doctors without first securing authorization from Mullis or a subpoena issued upon proper notice as required by section 456.057(7)(a)3.

In <u>Sun</u>, the Fourth District Court of Appeal suppressed the physical evidence—written statements and patient contracts—secured in violation of section 456.057 (7). In <u>Mullis</u>, the Second District Court of Appeal suppressed oral statements

---

5. To a regional poison control center for purposes of treating a poison episode under evaluation, case management of poison cases, or compliance with data collection and reporting requirements of s. 395.1027 and the professional organization that certifies poison control centers in accordance with federal law.

made to the officer over the telephone[4] because, as that court later explained, while section 456.057 does not bar members of the public from seeking medical information about patients, that section does bar healthcare providers from providing such information, and law enforcement officers are precluded from pressuring healthcare providers into violating the statute:

> Section 456.056(7) does not prevent an ordinary citizen form exercising his or her First amendment right to call a doctor's office seeking information about a patient. Instead, it bars the doctor's office from giving out that information. Mullis, 79 So. 3d at 752-53, essentially concludes that law enforcement officers are not free to use their indicia of authority to pressure or cajole the staff at medical officers to violate this statute.

State v. Crumbley, 143 So. 3d 1059, 1067 (Fla. 2d DCA 2014).

### a. Dr. Shapiro's testimony

In this case, the oral representations made by Dr. Shapiro about Strickling did not derive, as did those in Sun and Mullis, from inquiries initiated by law enforcement officers. Nor did the officers pressure or cajole Dr. Shapiro or his staff to secure information. Rather, Dr. Shapiro initiated contact with the police and then volunteered limited information to them when they responded to his report of criminal activity. Moreover, and unlike the investigating officers in Sun

---

[4] Those statements were that: (1) Mullis was a patient; (2) the physicians at issue had prescribed controlled substances to Mullis; (3) Mullis had not informed the physicians that he had received a prescription for a controlled substance from another provider within the last thirty days; and, (4) the physician at issue would not have prescribed a controlled substance to Mullis had they known of the prior prescriptions.

and <u>Mullis</u>, the officers in this case had no information that would allow them to secure either consent, a search warrant, or a section 456.057(7)(a)3 subpoena for information about Strickling when they proceeded to Dr. Shapiro's office to investigate his call. On this record, we find no basis for excluding him as a witness.

We also find no support in the Fourth Amendment to suppress his testimony. As Strickling conceded below, when Dr. Shapiro initiated contact with the police and then told them that he believed that Strickling was doctor shopping, no state action was involved so as to implicate the Fourth Amendment:

> Your Honor, I believe the State – the State would be accurate that there was no State actor had Dr. Shapiro just picked up the phone and called and said, hey, I think I have a guy who's here, he's doctor shopping, this is what I know. I think if it was just, this is what I know, it would have been a different story than we have here today.

See <u>State v. Parker</u>, 991 So. 2d 411, 415 (Fla. 3d DCA 2008) (stating "[i]n the Fourth Amendment context, the exclusionary rule applies to evidence obtained by illegal police or prosecutorial actions, regardless of whether the evidence obtained is reliable or unreliable, because the purpose of the rule in the Fourth Amendment context is to deter illegal state action. <u>See</u>[,] e.g., <u>Illinois v. Krull</u>, 480 U.S. 340, 353, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); <u>United States v. Leon</u>, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); <u>Stone v. Powell</u>, 428 U.S. 465, 486, 96 S.Ce. 3037, 49 L.Ed.2d 1067 (1976). However "[b]ecause the exclusionary rule

in respect to Fourth Amendment violations is based upon the deterrence of illegal police or prosecutorial action, **it is not triggered by the actions of private persons however egregious they may be**." State v. Pailon, 590 A. 2d 858, 861 (R.I. 1991) (emphasis added) (citing United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Thus, in the Fourth Amendment context, the exclusionary rule only applies to state action.").

We also agree with our sister court's assessment that information such as that provided by Dr. Shapiro is merely "investigatory material that probably never would have been admissible at trial," and would not support excluding this witness in any event. Crumbley, 143 So. 3d at 1067; see generally 42 U.S.C.A. § 1320d (the federal Health Insurance Portability and Accountability Act of 1966 (HIPAA)); 45 C.F.R. § 160.103; 45 C.F.R. § 164.512(f)(2) (providing that "a covered entity may disclose protected health information in response to a law enforcement official's request for such information for the purpose of identifying or locating a suspect . . . provided that . . . [t]he covered entity . . . disclos[es] only" the name and address; date and place of birth; social security number; ABO blood type and rh factor; type of injury; date and time of treatment; date and time of

death, if applicable; and a description of distinguishing physical characteristics including height, weight, gender, race, hair and eye color, presence or absence of facial hair, scars, and tattoos).

Dr. Shapiro should not, therefore, have been precluded from being subpoenaed to testify. [5, 6]

## b. Dr. McKnight

_____

[5] In State v. Carter, 23 So. 3d 798, 801 (Fla. 1st DCA 2009), the court observed:

> Even where evidence is disclosed by a covered entity in violation of HIPAA standards, suppression of the records is not provided for by HIPAA and is thus not a proper remedy. State v. Mubita, 145 Idaho 925, 188 P. 3d 867, 878 (2008); State v. Straehler, 307 Wis.2d 360, 745 N.W. 2d 431 (2007). Fines and imprisonment, not suppression of evidence, are the remedies expressed in the Act for violations of the disclosure standards by a covered entity. 42 U.S.C. §§ 1320d–5, 1320d–6. Exclusion of evidence is proper only where the statute violated provides for such exclusion, or where a constitutional violation has occurred. See generally Jenkins v. State, 978 So. 2d 116 (Fla. 2008). As stated in U.S. v. Zamora, 408 F. Supp.2d 295, 298 (S.D. Tex. 2006), "HIPAA was passed to ensure an individual's right to privacy over medical records, it was not intended to be a means for evading prosecution in criminal proceedings." See also State v. Eichhorst, 879 N.E. 2d 1144 (Ind. Ct. App. 2008); State v. Yenzer, 40 Kan. App.2d 710, 195 P. 3d 271 (2008).

[6] This determination does not prevent the court below from precluding or excluding portions of Dr. Shapiro's testimony which might otherwise violate these provisions or be inadmissible. See generally J.B.J. v. State, 17 So. 3d 312, 318 (Fla. 1st DCA 2009) ("Prior consistent statements are generally inadmissible to corroborate or bolster a witness's trial testimony because such statements are usually hearsay.").

We come to a different conclusion with regard to Dr. McKnight. While the State argued against suppression of Dr. Shapiro's testimony and the medical records belonging to him that were turned over to the officers, it conceded from the start of the hearing on Strickling's motion to suppress, that suppression of Dr. McKnight's verbal and written statements was appropriate:

> It's a little bit of a different factual scenario [as to Dr. McKnight], so we do recognize at least as to that, that statement, verbal and written would, fall under any guidelines for obtaining medical records information, and we do concede that that information should be suppressed.

Once Dr. Shapiro identified Dr. McKnight as having information about Strickling's treatment and prescription drug use, it was incumbent on the authorities either to secure Strickling's consent to allow Dr. McKnight to provide a statement and documents or put Strickling on notice and secure a subpoena to obtain information, either verbal or written, from Dr. McKnight. See Sun, 82 So. 3d at 866 (suppressing written statements and patient contracts procured in violation of section 456.057). The failure to do so requires that he be precluded from testifying in this matter.

### c. Dr. Shapiro's and Dr. McKnight's Medical Records

We also agree that the medical records provided by Dr. Shapiro, which were comprised of both his and Dr. McKnight's records, were properly suppressed. Once the officers arrived at the medical clinic and Dr. Shapiro identified Strickling

11

and voiced his concerns, it was incumbent on the officers to either secure authorization from Strickling or to give notice and secure a subpoena to secure his medical records. Even the exigent circumstances of a suspected crime in progress did not necessitate the handing over of Strickling's medical file at that moment. And, while confidential medical records need not be excluded from use "any time the State fail[s] to comply with the statute," such records should be excluded when "the State [fails to make] a good faith effort to comply with the statute:

> An important consideration in this case is the State's repeated attempts to meet the statutory requirements, and the fact that some of the effort was misdirected is not dispositive and should not result in a per se rule that prohibits future compliance. Accordingly, we quash the Second District's decision in Johnson, and disapprove of the opinion in Rutherford, to the extent that it would apply the exclusionary rule any time the State failed to comply with the statute, without regard to whether the State made a good faith effort to comply with the statute. However, we also disapprove of Manney to the extent that the Fifth District would never preclude the State from using the medical records, so long as the State subsequently complies with section 395.3025 by establishing reasonable suspicion through the introduction of facts that are independent of the records themselves.

Johnson, 814 So. 2d at 394.

In this case, the authorities made no effort to secure either consent or a subpoena until long after Dr. Shapiro handed over Strickling's medical records and long after Strickling was arrested and charged. Under the circumstances we can neither agree with the State that it acted in good faith nor disagree with the trial court's determination that it failed to so act. The medical records secured from Dr.

Shapiro, comprised of both his and Dr. McKnight's records, were properly suppressed.

We therefore affirm the trial court's order excluding the testimony of Dr. McKnight and the medical records turned over to authorities by Dr. Shapiro. However, we reverse that portion of the order excluding all testimony from Dr. Shapiro.

Affirmed in part, reversed in part, and remanded.